CHARLOTTE E. NEIBLING ET AL., Appellants, v. METHODIST ORPHANS' HOME ASSOCIATION ET AL.

Division One, July 30, 1926.

**1. WILL: Revocation by Subsequent Will.** Absent from a will any revocatory clause, it does not revoke a former one unless there is an irreconcilable conflict between them; and if there is only a partial conflict the courts 'll endeavor to reconcile them, and if that cannot be done will rule that the earlier has been revoked by the later one only so far as they are incon-

sistent and make a different disposition of the same property. But if the later makes a complete disposition of testator's property it impliedly revokes an earlier will.

2. ———: ———: **Described as Last Will.** The mere fact that the later will describes itself as testator's last will and testament is of small significance in determining whether it supersedes the earlier will.

3. ———: **Two Complete Instruments: Inconsistent Dispositions.** Each of two testamentary instruments, made seven years apart by the same testatrix, is a complete and separate will in and of itself; each makes a full and entire disposition of her estate; each names the same executor, and contains a direction to him to buy a cemetery lot and to erect a suitable headstone to her grave; each bequeaths certain articles of jewelry and personal effects and directs how and among what relatives and friends they are to be divided; each contains a residuary clause, completely disposing of all the residue of her estate after certain named special bequests are paid, but naming wholly different beneficiaries; bequests made to some beneficiaries by the later instrument are less than those made to the same persons by the earlier one, and some legatees are named in the first who are not named in the later instrument; the later contains no revocatory clause; and evidence was proffered that testatrix had said about the time the second was being drawn and subsequently that her reason for making the later instrument was that she had more money at the time it was drawn than she had when the first was made, and that she wanted the first to stand just as it is. **Held,** that the later instrument cannot be considered as a codicil of the earlier one, but the earlier one was revoked by the later and is not entitled to probate.

4. ———: ———: **Inclosed Together: Inscription on Envelope.** Extrinsic evidence is not available to alter or detract from or add to the provisions of a will. Not even is unattested memorandum in testator's handwriting competent to alter the provisions of an unambiguous will. Two testamentary instruments were found, after the death of testatrix, inclosed in a sealed envelope, upon which was indorsed, in her handwriting, the words: "Last will and testament of Margaret A. Sleith, 4385 Maryland Avenue. I direct that in the event of my death this sealed envelope inclosing my last will and testament shall be delivered unopened to the Probate Court of the City of St. Louis. Margaret A. Sleith, 4385 Maryland." **Held,** that no significance or effect is to be given to this inscription. It is a mere memorandum, is no part of the will, was not attested by two witnesses, does not indicate an intention to enlarge or alter either instrument, and will not authorize a holding that the two inconsistent and complete instruments were intended to constitute one will.

5. ———: **Intention: Extrinsic Evidence.** The testatrix's intention is to be ascertained from a written instrument duly executed and attested; and where the instrument speaks for itself with a clear and unambiguous meaning, parol or other extrinsic evidence to show a different intention is not competent.

6. ———: ———: **Peremptory Instruction.** Where the later will is clear and unambiguous in its meaning and makes a complete and entire disposition of all the property of testatrix, the question whether she intended by it to revoke a prior will is not a question of fact for the jury, but the court properly directs the jury to find against the proponents of her former will.

7. ———: **Declarations of Testator.** The declarations of a testator who has testamentary capacity and is free from undue influence are not admissible in evidence for the purpose of impeaching the clear and unambiguous language of his will. Under such circumstances, parol evidence of what testa-

tor said as to his intention, either before or after his will is made, is incompetent.

Corpus Juris-Cyc. References: **Wills,** 40 Cyc., p. 1174, n. 63, 64, 67; p. 1175, n. 68, 69, 70; p. 1176, n. 71, 72; p. 1290, n. 73; p. 1333, n. 56; p. 1424, n. 85; p. 1427, n. 8; p. 1428, n. 10; p. 1433, n. 28; p. 1434, n. 29, 31; p. 1435, n. 32.

Appeal from Circuit Court of City of St. Louis.—*Hon. William H. Killoren,* Judge.

AFFIRMED.

*R. M. Nichols* for appellants.

(1) The court erred in excluding the testimony of witnesses Misses Robinson and Niebling, as to the declarations of Margaret A. Sleith in July, 1921, after the execution of the second will, to the effect that she (Miss Sleith) made the second will because she had more property than when she made the first, and that she wanted the first will as a part of her will. Thompson v. Ish, 99 Mo. 160; Mann v. Balfour, 187 Mo. 290; 28 R. C. L. Wills, sec. 127, p. 170; Whitney v. Hanington, 36 Col. 407; Lyon v. Fisk, 1 La. Ann. 444; In Matter of Page, 118 Ill. 576; Baird v. Schaeffer, 101 Kan. 585; In re Johnson's Estate, 175 N. W. 917; Ewing v. McEntire, 141 Mich. 506; Behrens v. Behrens, 47 Oh. St. 323; Yerby v. Yerby, 3 Call (Va.) 334; Mangle v. Parker, 75 N. H. 139; In re Shelton Will, 143 N. C. 218; Jones on Evidence, sec. 484, p. 749; Clark v. Turner, 38 L. R. A. 436, note; Weeks v. McBeth, 14 Ala. 474; Patterson v. Hickey, 32 Ga. 556; Schmee v. Schmee, 61 Kan. 643; Muller v. Muller, 108 Ky. 511; Harring v. Allen, 25 Mich. 505; Wilbourn v. Shell, 59 Miss. 205; Williams v. Miles, 68 Nebr. 463; Lane v. Hill, 68 N. H. 275; In re Saunders' Will, 177 N. C. 156; Foster's Appeal, 87 Pa. St. 67; Glockner v. Glockner, 263 Pa. St. 298; Samuel v. Hunter's Exect., 122 Va. 636; In re Johnson's Estate, 170 Wis. 436. (2) The making of the subsequent will is not in itself a revocation of the prior one, nor is the fact that the subsequent will is a complete disposition of the deceased's property a revocation of the prior one, for the reason that under the law a person may have two or more testamentary papers as his or her last will. Odenwalder v. Schorr, 8 Mo. App. 458; Harwood v. Goodright, 2 W. Bl. 937; In re Bryan, 6 British Rul. Cas. 35; Whitney v. Hannington, 36 Col. 407; Williams v. Miles, 68 Neb. 463; Lane v. Hill, 68 N. H. 272; Nelson v. McGiffert, 3 Barb. Ch. (N. Y.) 168; Re Cunnion, 201 N. Y. 123; Schultz v. Schultz, 10 Gratt. (Va.) 358; Owen v. Groves, 145 Ga. 287; In re Terrell's Estate, 17 Ariz. 418; In re Merrifield's Estate, 167 Cal. 729; Palmer v. Owens, 229 Ill. 115; Smith v. Gorham, 152

Ill. App. 125; Sellards v. Kirby, 82 Kan. 291; In re Swain's Will, 162 N. C. 213. (3) The fact that the will of 1920 is headed "Last Will" is no evidence of revocation of the prior will. Fry v. Fry, 125 Iowa, 424; Gordon v. Whitlock, 92 Va. 723; Re Venable, 127 N. C. 344; Leslie v. Leslie, Ir. Rep. 6 Eq. 332. (4) The only issue that should have been tried by the circuit court is the question of whether or not the paper-writing produced for probate was the will of Margaret A. Sleith. That court had nothing to do with the provisions of the will and should not take into consideration the question as to whether or not the residuary clauses of the two wills are contradictory, or any other provision of the will. R. S. 1919, sec. 525; Cox v. Cox, 101 Mo. 168; Lilly v. Tobbein, 103 Mo. 477; Owens v. Sinklear, 110 Mo. 54; Gordon v. Burris, 141 Mo. 601; 1 Woerner on Am. Law Admins. (2 Ed.), star p. 485; In re Pforr's Estate, 144 Cal. 121; In re Murray's Will, 141 N. C. 588; Wells v. Thompson, 140 Ga. 119; Neimand v. Seeman, 136 Iowa, 713; Taylor v. Hilton, 23 Okla. 354; In re Young's Will, 153 Wis. 337. In Wells v. Thompson, supra, quoting excerpt from the digest, it is said: "In a proceeding to probate a will in solemn form the only issue in *devisavit val non*, and hence the construction of the will is not an issue." In Neimand v. Seeman, supra, quoting excerpt from the digest, it is said: "On the hearing of an application for the probate of a will the court is not charged originally with the duty of construing the will, but is only required to determine whether it has been executed according to law and whether the testator had mental capacity at the time of execution." In Taylor v. Hilton, supra, quoting excerpt from the digest, it is said: "The court is without jurisdiction in a proceeding for probate to construe or interpret the same or exclude any part thereof from probate." In re Young's Will, supra, quoting excerpt from the digest, it is said: "Whether a properly executed will was so indefinite and uncertain that the testator's intent could not be ascertained, should be determined after its admission to probate, and not in the proceeding for probate." (5) The two papers, in her own handwriting, sealed in one envelope, indorsed, "Last Will and Testament of Margaret Sleith, 4385 Maryland Avenue" (then following directions in the event of her death), "signed Margaret Sleith, 4385 Maryland Avenue, Union Trust Company Safe Deposit Vault, St. Louis," was the uncontradicted evidence of her intention that the two papers constituted her will. This evidence was sufficient to carry the case to the jury without the excluded testimony. If there was any evidence of her intention to revoke the prior, by a subsequent will, this was a question of fact for the jury. 28 R. C. L. sec. 124, p. 168; Billington v. Jones, 108 Tenn. 234.

*Salkey & Jones* for respondents.

(1) The will of February 17, 1913, was revoked by the execution of a complete will in writing by the same testatrix dated July 22, 1920. R. S. 1919, sec. 508; Swinburne on Wills, point 7, par. 14; Burden's Estate, 11 Pa. 130; Arndt v. Arndt, 1 Serg. & R. 256; Barker v. Bell, 49 Ala. 284; 37 L. R. A. 565, notes; In re Bryan, 6 British Ruling Cases, pp. 26, 30, 37. (2) Parol testimony as to what the testator said as to his intention, either before or after the will is made, is incompetent. To admit such testimony would be to permit wills to be made by parol and would in effect repeal the statute requiring them to be in writing. Wooley v. Hays, 285 Mo. 577; Hurst v. Von de Veld, 158 Mo. 247; Spoonemore v. Cables, 66 Mo. 597; Gibson v. Gibson, 24 Mo. 227; Cawthorn v. Haynes, 24 Mo. 237.

SEDDON, C.—Action seeking to establish a testamentary writing as a part of the last will and testament of Margaret A. Sleith, deceased. Plaintiffs are the legatees named in said testamentary writing. Margaret A. Sleith, a resident of the city of St. Louis, died on or about March 21, 1922. After her death, there was found, in a small trunk containing her valuables, a sealed envelope, upon which was endorsed, in testatrix's handwriting, the following:

"Last Will and Testament of Margaret A. Sleith, 4385 Maryland Avenue.

"I direct that in event of my death this sealed envelope enclosing my last will and testament shall be delivered unopened to the Probate Court of the City of St. Louis.

"Signature: Margaret A. Sleith.
"Address: 4385 Maryland."

The sealed envelope was presented to the Clerk of the Probate Court of the City of St. Louis, who opened it by loosening or breaking the sealed flap. The envelope was found to contain two testamentary writings, in testatrix's handwriting, both executed by testatrix and the execution properly attested by the requisite number of witnesses. One of the writings is dated February 17, 1913, and is as follows:

"St. Louis, Missouri, 4385 Maryland Avenue, February 17, 1913.

"In The Name of God Amen:

"I, Margaret A. Sleith, of St. Louis, Mo., being of sound mind and memory, but mindful of the uncertainty of life and the certainty of death, do make, publish, ordain and declare this to be my last and only will and testament, in the manner following.

"Item 1st. I have no debts or bills of any kind, but should I have any just debts, I hereby authorize my executor hereinafter named

to pay them, also to pay my funeral and testamentary expenses, so soon after my decease as practicable.

"I hereby declare that I have no living relatives to my knowledge. If any should be found after I have passed away, I leave to each one of them one dollar, no more and no less, as they are nothing to me and I do not even know them.

"I hereby give and bequeath to the Methodist Orphan's Home Association $2000 two thousand dollars because Mrs. J. J. O'Fallon has been so kind to me always.

"To Thurman and Berstelle O'Neil, now living in Augusta, Ky.. $1000 one thousand dollars each, with the request that it be used to help educate them.

"To the Pilgrim Congregational Church of St. Louis $1000 one thousand dollars, because it is dear to my heart.

"To the Congregational City Missionary Society of St. Louis $1000 one thousand dollars. To Annie Mayer Smith of Missouri, whom I have brought up in the Home, $1000 one thousand dollars to help educate her children.

"To Helen T. Hedges of Nebraska $1000 one thousand dollars, to held educate her children, to Mrs. Albert Baldwin of Duluth, Minn., $1000 one thousand dollars, to help educate her two girls.

"To Miss L. R. Tuppre $500 five hundred dollars, now living at St. Joseph, Mo.

"To Belle Walker of Kansas City, Mo., $500 five hundred dollars with the request that she pay the interest of it to Miss F. A. Burges while she lives. Mrs. Sadie Ketring of Jerseyville, Ill., $500 five hundred dollars. To Miss Lottie Niebling $500 five hundred dollars, with the request that she keep it for a rainy day. To Miss Winnie Wilson now living on McPherson Ave. $500 five hundred dollars a friend of mine, Mrs. E. L. Snow $500 five hundred dollars she is a girl friend of mine, if she is still living at my death, (but not to be paid to her estate). To Nellie Wallace whom I raised up in the Home $500 five hundred dollars. To Blanche Wilkisson $300 three hundred dollars. Mattie King $300 three hundred dollars, to Miss Agnes Collins now of Alton, Ill., $200 two hundred dollars as a little gift.

"To Mrs. Wm. Lewis nee Grace Neibling $200 two hundred dollars. Miss Nettie Jewel a child of the M. O. Home $400 four hundred dollars, to help educate her for a nurse or anything she may choose to be.

"To Mrs. R. M. Nichols of St. Louis a piece of land in Barber Co., 160 acres, the deed is in my safe box in Union Trust Co., I leave this to Mrs. Nichols because her husband Mr. R. M. Nichols has always helped me in all of my money matters. The sum of $300

three hundred dollars I leave to Miss Stella Robinson house keeper in the Home.

"I advise that Mr. R. M. Nichols buy a lot for me in Bellefontain Cemetery, put up a suitable head stone and put aside some money to pay for the care of it, also to use all money necessary for my funeral expenses, two or three thousand dollars as it may seem best. "After Mr. Nichols is paid for his trouble for I now appoint Mr. R. M. Nichols my executor without bond knowing he will do just what is right, after all bills and everything is settled up I desire if there is any money left over that it be divided between American Board of Foreign Missions and the Home Mission Board, going through Pilgrim Church. To Miss Stella Robinson my long broad cloth coat. To Mattie King my ruby ring. To Mattie Jewel my gold chain and cross. My watch and chain to Mrs. Hedges, mentioned in my money distribution, Lottie my little pearl pin. To Sadie Ketring my pearl and diamond pin. My gold handled umbrella to Mrs. Bugersteff. My large diamond ring to Thurman O'Neil. To Berstelle O'Neil of Augusta, Ky., my gold thimble, my clothing, books, pictures and other little jewelry, dishes, vases and in fact all my belongings. I desire that Miss Stella Robinson, Miss Helen Hedges, Lottie Neibling, Grace Neibling, Mattie King, Sadie Ketring, see that everything is divided up with my friends and yourselves. Nettie Jewel to have my cuff buttons, the gold cuff buttons.

"I have made this will as I am to have a trip across the sea.

> "Margaret A. Sleith
> "August Niemann
> "Christine Kloepper."

The other writing is dated July 22, 1920, and is as follows:

"My last will 1920.

"I wish Mr. R. M. Nichols to be my administrator.

"I wish Lottie Neibling to have 2000 two thousand dollars. Sadie Ketring 1000 one thousand, Anna Myer Smith of Tulsa 1000 one thousand, Mrs. Abigail Clapp Baldwin of Duluth 1000 one thousand. The interest she to give her mother while she lives.

"I leave to Mrs. R. M. Nichols for all their kindness to me $500 five hundred dollars. May Wright Potts $500 five hundred. To the Methodist Orphan's Home which I have served so faithfully for so long the sum of Five hundred dollars on condition they put my name under Mrs. J. J. O'Fallons in the vestibule as she told me she would have that done, I wish Mr. R. M. Nichols to use money enough to buy a lot in Bellefontain and to have a head stone in keeping with my position and the lot. I make the request that I be put away nicely that is all.

· "To Miss Stella Robinson of De Sota $500 five hundred dollars. To Mrs. Laura Fischer & Children $1000 one thousand dollars, lives in Calif.

"I would like to have Lottie Neibling and Sadie Ketring divide my all personal effects, to those they think I would like to have them of course this includes them.

"To Pilgrim Cong. Church Woman's Dept. what remains of my estate.

"MARGARET A. SLEITH.

"July 22nd, 1920

"MRS. M. L. CUNDIFF<br>"MRS. EMMA C. SEVERIN<br>"MRS. ELMER GARNER."

The latter document, dated July 22, 1920, was admitted to probate by said probate court on April 4, 1922, as the last will and testament of said Margaret A. Sleith, but said probate court refused to admit to probate and rejected the document first herein mentioned, dated February 17, 1913, and issued to the executor therein named a certificate of the rejection of said paper writing. Thereupon, on August 29, 1922, the instant action was commenced in the Circuit Court of the City of St. Louis. Appropriate answers were filed by the several defendants, raising the issue whether said instrument dated February 17, 1913, is a part of the last will and testament of said Margaret A. Sleith. No issue is tendered by the pleadings respecting testatrix's mental capacity to make a will, nor is the issue of undue influence over the testatrix raised.

The plaintiffs, as proponents of said testamentary document, proved by the attesting witnesses the execution and publication of said document by the testator on the date of its execution, February 17, 1913. Plaintiffs also introduced in evidence a certified copy of the later testamentary document dated July 22, 1920, admitted to probate on April 4, 1922, as the last will and testament of Margaret A. Sleith, together with the certificate of probate thereof. Thereupon, plaintiffs offered to prove by the witness, Stella Robinson, the following:

"Q. Now, then, did you or did you not have a conversation with her (testatrix) with reference to her will? A. Yes, sir.

"Q. Miss Robinson, that conversation was in July, 1921? A. Yes, sir.

"Q. Now, she said to you that she had made another will? A. Yes, sir.

"Q. And you asked her whether or not she had torn up her first will; is that right? A. Yes, sir.

"Q. And what did she (testatrix) say to that? A. She said, 'No. I didn't tear it up because I want it to stand just as it is.'

"Q. Just as it is? A. Yes.

"Q. And then what did you say and what, if anything, followed? A. I then said to her she could not have two wills. She said, 'Well, this is fixed so it will be all right.'

"Q. Did she say anything else? A. Well, she said, 'I find I had more money than I thought I had, and I have made this other will.' She says, 'I gave you more money and I gave Lottie (Neibling) more and Sadie (Ketring) more and I have also left May Wright Potts some money to use for Florence.' That is her baby. May was raised in the home and was later married, and she had been there on a visit. She left this money for the child.'

"Q. Now, was there anything further along that line? A. Well, I don't think so, Mr. Nichols."

Plaintiffs also offered to prove by the witness Charlotte (Lottie) E. Neibling the following:

"Q. Now, then, did you subsequently have a conversation with her (testatrix) about another will? A. Why, yes; she told me she had made another—

"Q. Yes. Now, when was that conversation? A. Oh, that was just a few days before she drew this last will.

"Q. Just a few days before she drew this last will? A. Yes, just a few days before.

"Q. That was in July, 1920? A. 1920.

"Q. July 22nd? A. Yes, because she was going away at that time.

"Q. Yes, she was going away. Now, Miss Neibling, what did she say to you in that conversation? What was that conversation? A. About the will, you mean?

"Q. Yes. A. Well, she was going away, and I was very ill at the time, and she said to me over the phone, she called me up and she said, 'Now, I have drawn up another will and I have left you enough money; if you will get well, and I come back, why, it will be all right, but I have left enough money so if you take care of it you will have something to fall back on,' and this was over the phone. because I was getting ready to go to St. Luke's Hospital; I was quite ill, and she had talked to me about the will when I was up there about three days previous to this.

"Q. And what did she say? A. She said, 'I have got more money than I had when I made my first will and I must think of that.'

"Q. Was that all that was said? A. Oh, I can't tell, Mr. Nichols; no, she talked to me about a great many things. I can't recall. She told me most everything that she did. I think I was nearer to her than anybody else.

"Q. Did she or did she not say why she made this second will? A. Why she made the second will?

"Q. Yes. A. Because she wanted to dispose of her money. She said she had more money than she had when she made the first will."

Upon the timely objections of defendants thereto, the foregoing proffered testimony was refused by the trial court. At the close of the proponents' case in chief, the trial court gave to the jury the following peremptory instruction, at the request of defendants:

"At the close of all the testimony offered on behalf of the plaintiffs, the court instructs the jury that under the law and the evidence the paper writing of Margaret A. Sleith, dated February 17, 1913, was revoked by the execution of the paper writing dated July 22, 1920, and you will therefore return a verdict that the said paper writing of February 17, 1913, is not the last will and testament of said Margaret A. Sleith, deceased, and is no part of her last will and testament, but that said paper writing dated July 22, 1920, and that alone is the last will and testament of said Margaret A. Sleith."

Thereupon the jury returned the following verdict:

"We, the jury in the above-entitled cause, do find that the paper writing dated the 22nd day of July, 1920, propounded as the last will and testament of said Margaret A. Sleith, deceased, is in truth and in fact the last will and testament of said Margaret A. Sleith, deceased."

Whereupon, the trial court entered judgment to the effect that "the paper writing dated July 22, 1920, purporting to be the last will and testament of Margaret A. Sleith, deceased, is proven to be, established and declared the last will and testament of said Margaret A. Sleith, deceased, and that the plaintiffs pay the costs of this proceeding, and that execution issue therefor." After unsuccessfully seeking a new trial, plaintiffs appeal to this court.

I.  Appellants assign error in the giving, at request of respondents, of the peremptory instruction. The issue before us is clear and well defined. It may be thus stated: whether the testamentary instrument executed and published on July 22, 1920, is a codicil to the testamentary writing executed and published on February 17, 1913, so that the two instruments together must be taken and construed as one will and probated as such; or, whether the later instrument is a full and complete revocation of the former testamentary instrument. Our Statute of Wills provides (Sec. 508, R. S. 1919): "No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, *except by a subsequent will, in writing*, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction." (Italics ours.) If the later instrument contained a revocatory clause, specifically and expressly revoking any and all former wills made by the testatrix,

**Revocation: Codicil.**

the point in issue would be easy of solution, for it is an unquestioned principle of law that such a clause, absent a clear contrary intent to be gathered from the several instruments, clearly and unmistakably manifests the intent of the testatrix to revoke all former wills. [40 Cyc. 1174; 1 Woerner on American Law of Administration (3 Ed.) sec. 50, p. 136.] The later document, however, contains no such revocatory clause; therefore, it is incumbent upon us to determine the effect of the later instrument upon the former and earlier document and whether both documents constitute one will and testament.

It seems to be well settled that a will may be impliedly revoked by the execution of a later will containing no express clause of revocation, but containing provisions inconsistent or repugnant with those of the earlier will. [40 Cyc. 1175.] If the wills are only partially conflicting, that of the later date will operate to revoke the former only so far as the provisions of the two are conflicting or incompatible, and, in such case, both wills are entitled to probate, for the courts will strive to reconcile the dispositions of property in the two wills and will sustain both, unless there is such a plain inconsistency as makes it impossible for the wills to stand together. [40 Cyc. 1175, 1176.] The matter is thus stated by Underhill on the Law of Wills, vol. 1, sec. 251: "The general rule is that, if two or more wills, or a will and one or more codicils, executed at different times, are found in the possession of the testator at his death, the provisions of the later will or codicils will prevail over those of the former, but only so far as they are inconsistent and irreconcilable with them. The latest will or codicil is presumed to express the completely matured testamentary intentions of the testator as regards the disposition of his property; and, so far as it cannot be reconciled with the writings which precede it, they must give way. The later will or codicil is a revocation of the earlier, so far as there is an irreconcilable inconsistency between them. . . . But even where the repugnant gifts are contained in different papers, every effort should be made to reconcile the several parts; and the disposition of the later will or codicil should only be permitted to overcome the disposition in the former so far as seems consistent with the whole purpose of the testator. A revocation by implication is not favored by the courts. They will, if possible, endeavor to reconcile and harmonize the several writings in order to give effect to all of them."

It is also announced by the text-writers that the mere fact that the subsequent will is described as the testator's last will and testament is entitled to very little weight in determining whether it shall supersede the original or earlier will. [40 Cyc. 1173; 1 Woerner on Administration (3 Ed.) sec. 51, p. 141.] As said by Underhill on Wills, vol. 1, sec. 256: "The expression, 'last will,' or 'this is my last will,' contained in one of several wills, raises no presumption

whatever of a revocation as regards the wills which antedate the instrument in which it is contained. It means only that one will was executed after the others."

An early text-writer, Swinburne on Wills (1803), vol. 3, page 974, part 7, sec. 14, says: "Concerning the making of a latter testament, so large and ample is the liberty of making testaments, that a man may, as oft as he will, make a new testament even until the last breath; neither is there any cautel under the sun to prevent this liberty; but no man can die with two testaments, and therefore the last and newest is of force: so that if there were a thousand testaments, the last of all is the best of all, and maketh void the former."

Mr. Woerner, in his authoritative work on the American Law of Administration (3 Ed.) vol. 1, sec. 51, p. 139, states the general rule thus: "If, therefore, the later or latest will dispose of the whole of a testator's estate, all former wills are thereby revoked."

In an English case, Dempsey v. Lawson (1877), 2 P. and D. 98, the subject is discussed in these words: "If it can be collected from the words of the testator in the later instrument that it was his intention to dispose of his property in a different manner to that in which he disposed of it by the earlier document, the earlier document will be revoked, and this, although in some particulars the later will does not completely cover the whole subject-matter of the earlier. This was decided by Sir HERBERT JENNER FUST in Plenty v. West (1845), 1 Rob. Eccl. Rep. 264, 16 Beav. 173."

In re Bryan, 6 British Ruling Cases, 26, Sir GORELL BARNES, delivering the opinion of the Divisional Court, said: "The question turns upon whether a will dated 1864, with a codicil thereto, and a will dated 1867 shall be admitted to probate as together constituting the true last will of the deceased, or whether the will of 1867, which has already been proved in common form, shall alone be admitted to probate. It is contended, on the one hand, that as the earlier will and codicil dispose of the whole property of the deceased, and as the later will contains no clause of revocation and does not dispose of the residue, the last document cannot be held to work a revocation of the earlier documents. On the other hand, it is contended that the last document is so inconsistent with the others that they cannot stand together; and, further, that if this is not plain from the documents themselves, extrinsic evidence is admissible to show the intentions of the testatrix. In my opinion, revocation may be implied from the terms of the last document, even though it contain no express clause of revocation and the whole estate of the deceased be not thereby disposed of." Thereupon, the author of the opinion proceeds with a learned review and discussion of the English authorities supporting his conclusion.

The exact point is ruled in Simmons v. Simmons, 26 Barb. (N. Y.) 68, where it is said: "The due execution of what purports to be Peter Simmons's last will and testament, on the 14th day of July, 1855, is sufficiently proved. On that point the parties before us agree. They also agree that in April, 1855, Peter Simmons duly made and executed *a* last will and testament, which in July, 1855 (soon after the execution of the will first named, and on the same day) was destroyed by the testator's direction, but not in his presence; he being in an adjoining room. The contents of this will are not proved. A will duly executed by the same testator, dated September 14, 1852, is also admitted in evidence; which purports to dispose of the testator's whole property. The will of July 14, 1855, after giving sundry legacies, and making some specific devises, divides in equal shares among his legal heirs, nine in number, the residue of his real and personal estate; and then provides that its legacies are to be paid 'out of bonds and notes in his possession, and any real estate not herein disposed of;' that is, not specifically disposed of. The respondents claim that the will of July, 1855, was properly admitted to probate, by the Surrogate of Albany County; and that his decree, so admitting it, should be affirmed. The appellants claim that the *three* testamentary instruments, *together,* constitute the *will;* and must all stand as *one will.* . . . It should be observed that, between a codicil and a subsequent will, there is this difference of construction; a codicil is a republication and ratification of so much of the prior will as it does not revoke; whereas a new will (if it provides for a full disposition of all the testator's estate), though inconsistent but *in part* with the former will, and absolutely agreeing in part, revokes the whole prior will, by substituting a new and last disposition for the former one; since it must revoke in part (so far as inconsistent); and it were merely idle to continue the former one in force for those parts which are fully carried into effect by the new one. [Powell on Dev. 543, 4 Vesey, 187.] . . . The common sense of it seems to be clearly stated (though but in the argument) in 3 Wilson, 506: 'It is certain no man can die with two wills' (i. e. two wills as to the same subject-matter, as in the case before us, each disposing of his whole property); 'the last must prevail.' . . . In view of these principles, both of plain statute construction; and of reiterated decisions on just such a statute as ours, I am unable to see how the will of July, 1855, which clearly provides for a full disposition of all the testator's property, can be held otherwise than inconsistent with even the valid existence of any prior will.''

In re Will of Edward Fisher, 4 Wis. 254, a testamentary paper of the date of March 18, 1844, was found, after the death of the testator, in his safe inclosed in a broken envelope; another testa-

mentary document of the date of March 25, 1850, was found in a pigeon-hole in testator's desk, the desk and safe both being in the house where he died. The subsequently dated instrument was admitted to probate and the earlier instrument was rejected by the probate court, and, on appeal to the circuit court, both instruments were admitted to probate as one will. On *certiorari*, the Supreme Court of Wisconsin, speaking through COLE, J., said: "I am of the opinion that the decision of the probate court was correct in admitting to probate the instrument of March 25, 1850, as the last will and testament of Edward Fisher, to the exclusion of the one dated March 18, 1844. Both of these papers, it will be observed, appear to be perfect and complete wills, properly executed and duly attested. They both likewise relate exclusively to personal estate, and by specific legacies and residuary clauses, each is entirely adequate to the disposition of all the personal property belonging to the decedent. It is very true that there are no words in the latter will expressly revoking the former, yet I think from the nature of the instrument itself, that it must necessarily operate as a revocation of it. To my mind it is very apparent that a man cannot have two independent wills of personal estate, at the same time, each acting upon the same subject-matter, and each professing to make a distinct and full disposition of such subject-matter; although he may leave several papers, positively disposing of his property, neither of which in itself *is*, or purports to be, a complete will. [Stone v. Evans, 2 Atk. 87; Beauchamp v. Earl of Hardwick, 5 Ves. Jr. 280; Bac. Abr. Title Wills 'D.'; 1 Jarman on Wills, marg. p. 160; Sandford v. Vaughan, 1 Phill. 128; Harley v. Bagshon, 2 id. 48.] Could I consider the instruments of March 18, 1844, and of March 25, 1850, as really constituting one will, I should have no difficulty in affirming the decree of the circuit court. But I cannot so regard them. Each instrument appears to me to be a distinct substantive will of itself, and not one in the nature of a supplement or codicil to the other. The latter in time is competent to make, and does in fact make, a different and full disposition of the testator's property. I think it must revoke the former and is the will of the deceased."

Among other respectable authorities, holding to the same view, may be mentioned Kern v. Kern, 154 Ind. 29; Schillinger v. Bawek, 135 Iowa, 131; Burden's Estate, 11 Phila. (Pa.) 130; Estate of Marx, 174 Cal. 762; Gardner v. McNeal, 117 Md. 27; and Swann v. Housman, 90 Va. 816. We regard the above-cited and quoted authorities as enunciating a reasonable and common-sense doctrine and principle, and we are therefore prone to follow them in arriving at a decision in the instant case.

A study and analysis of the two testamentary instruments executed and published by Margaret A. Sleith, the one on February

17, 1913, and the other on July 22, 1920, discloses that each is a complete and separate will in and of itself. Each instrument purports to, and does, make a full, complete and entire disposition of testatrix's estate. Each instrument names Mr. R. M. Nichols as executor and each instrument contains a direction to the executor named to buy a cemetery lot and to erect a suitable head-stone thereon. By the earlier instrument, certain personal belongings or effects of deceased, consisting of specific articles of jewelry and clothing, are bequeathed to certain named beneficiaries, with the further request and direction that six named persons shall "see that everything is divided up with my friends and yourselves"; in the latter instrument, however, the specific bequests of personal belongings are entirely omitted and that instrument directs, "I would like to have Lottie Neibling and Sadie Ketring divide *my all personal effects* to those they think I would like to have them, of course, this includes them." Each instrument contains a residuary clause, completely and fully disposing of any and all residuary estate, but with wholly different beneficiaries of such residuary estate. The earlier instrument provides, "after all bills and everything is settled up, I desire if there is any money left over that it be divided between American Board of Foreign Missions and the Home Mission Board, going through Pilgrim Church," whereas the later instrument provides, "to Pilgrim Cong. Church Woman's Dept. what remains of my estate." It is true that certain beneficiaries are named and provided for in the earlier instrument and omitted from the later one; and it is also true that the later instrument decreases the bequests made to certain beneficiaries by the earlier instrument and increases the bequests made to other beneficiaries. But that circumstance, in and of itself, is not convincing that testatrix intended both instruments together to operate as her one will, for the will, as regards the intention of the testatrix, speaks from the time of the death of testatrix, and she had the undoubted right to change or revoke her former will and make a new will for the purpose of fixing the distribution of her property from the very moment of her death. [Liggat v. Hart, 23 Mo. l. c. 138; Webb v. Archibald, 128 Mo. 299; Elzea v. Dunn, 297 Mo. l. c. 710.] It is apparent to us that the testamentary dispositions of property made by the later instrument are inconsistent and repugnant with the dispositions made by the earlier instrument, thereby evidencing, to some extent, at least, the intent of the testatrix to revoke the earlier instrument. But the later instrument constituting, as it does, a complete and entire will in and of itself and effecting a full, complete and entire disposition of testatrix's property, we are of the opinion, and so hold, in line with the apparent weight of authority, that it operates as a complete and entire revocation of the earlier instrument. The later instrument left nothing upon which the former and earlier instrument could operate.

It remains then for us to determine what, if any, significance or effect is to be given to the fact that both instruments were found, after the death of testatrix, inclosed in a sealed envelope, upon which was indorsed, in her handwriting, the following: "Last will and testament of Margaret A. Sleith, 4385 Maryland Ave. I direct that in event of my death this sealed envelope *inclosing my last will and testament* shall be delivered unopened to the Probate Court of the City of St. Louis," signed by testatrix. The record is silent as to when the directions upon the face of the envelope were written by testatrix, whether before or after the execution and publication of the later instrument. So far as the record shows, the envelope may have been used to inclose the earlier document, and, after the later instrument was published, the seal may have been broken, the later will inclosed, and the envelope resealed. There is nothing upon the record before us from which we may say with reasonable certainty that the written directions upon the face of the envelope were part of the *res gestae* relating to the execution and publication of the later instrument. Certain it is that the written directions upon the face of the envelope are no part of either will, nor was the writing upon the envelope attended with the formality required respecting the attesting and publication of a testamentary document, for it does not purport to have been witnessed by any attesting witness.

The generally accepted rule, amply supported by authority, is thus stated in 28 Ruling Case Law, page 268, section 243; "Evidence as to the intention of a testator separate and apart from that conveyed by the language used in the will is not admissible for the purpose of interpreting the will. Extrinsic evidence cannot be heard to alter, detract from or add anything to the provisions of a will, or to explain or contradict its contents, even though the consequences may be the total or partial failure of the testator's intended disposition. Parol evidence is not admissible to show that the testator meant one thing when he said another, or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to but did not in fact make. This rule is applied especially where the language of a will is plain and unambiguous. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution."

Schouler on Wills (6 Ed.) Volume 2, sections 906, 908, states the matter thus: "In modern times when the codes and policy of England and the United States harmonize in requiring not only that wills—whatever the description of property to which they relate—shall, with trivial exceptions, be expressed in writing, but embodied in some instrument which has been signed and witnessed with due

315 Mo.—38.

solemnity, we may well expect to find parol testimony of what the maker really intended, and, indeed, all proof *dehors* the testamentary paper or papers, more carefully shut out than formerly. The maxim hardens into a truism, that the will must speak for itself, that the testament shall afford its own testimony. . . . We may lay it down, then, at the outset, that where the language employed in the will is clear and of well-defined force and meaning, extrinsic evidence of what was intended in fact cannot be adduced to qualify, explain, enlarge, or contradict this language, but the will must stand as it was written. Courts, we have seen, are well enough disposed to correct the letter of such an instrument by its spirit; to overlook verbal errors and infelicities of expression, transpose phrases, and mould the language somewhat to meet the testator's obvious meaning. But to go a step beyond this and insert or substitute in effect that which the will never contained, or to vary or contradict its plain provisions and unambiguous language, our courts have stubbornly refused, and decline, to their honor, the insidious temptation of shaping men's wills for them. Far safer is it, as they deem it, to adhere to general limits prescribed by general rules. And if written testimony *dehors* the will should be rejected from this point of view, much more should be that looser and less credible parol proof which is purely oral. . . . In short, extrinsic evidence is incompetent to show the intention of a testator where the will speaks for itself with a clear and unambiguous meaning; nor can it be received to show a different intention from that which the instrument discloses; nor can it enlarge or diminish by construction the disposition as written out and executed, or supply any omissions or defects which may have occurred through mistake or inadvertence. . . . That which a testator executes as his will must so operate, notwithstanding his mistake of law; nor can it be set up from drafts, *from contemporaneous memoranda,* or even from the direct testimony of one's own scrivener or copyist, still less that loose hearsay which is always untrustworthy, that the decedent mistook in fact what has been written out.''

As an illustration of the extreme caution exercised by the courts in arriving at a testator's intention from contemporaneous writings and acts of the testator, and their disposition to reject all extrinsic evidence of such intention, we might cite In re Seiter's Estate, 265 Pa. 202, 108 Atl. 614, where four separate and unfastened pages or pieces of paper, the first starting in the usual phraseology and directing payment of debts, etc., the second disposing of the residue of the estate, the third in the form of a publication and attestation clause, and the fourth signed and sealed by the purported testator and attested by witnesses in the usual form of a will, but each separate paper not referring to any of the others, .delivered by testator

to his niece, who was a beneficiary named in one of said papers, with the declaration that it was his will, and the four unfastened pages or papers being inclosed in a sealed envelope, indorsed on the back of which were the words, "Will of John Seiter, Dated January 29, 1915," and inclosed in another envelope bearing the name of an attorney, were held not to be entitled to probate as the will of the pur ported testator.

The later testamentary document, executed by the testatrix, Margaret A. Sleith, and attested and published on July 22, 1920, with all the formalities required by our statute, is clear and unambiguous in its terms and language and manifestly effects a complete and entire disposition of all her property. She may possibly have intended it to operate only as a codicil; on the other hand, she may have intended it to operate as a complete will and disposition of her property, which upon its face it purports to do. We do not know. But that does not justify a conjecture or guess upon our part; or that of a jury, respecting her intention, and the substitution of our own judgment for the intention to be inferred and presumed from the clear and unambiguous language and purport of the later testamentary document prepared by testatrix in her own handwriting. It is safer and wiser for us to follow the established principles of law laid down by authoritative utterances in similar cases than to endeavor to make for testatrix a will and disposition of her property which she may never have intended, for as aptly said by Mr. Schouler, "if without other influence, other proof, a clear and unambiguous disposition is obtained, that disposition prevails; and should the testator's real intention be thereby frustrated, it is his own carelessly adopted or ill-chosen language that must answer for it."

It is urged by appellants that the intention of testatrix to revoke the prior by the subsequent will was a question of fact for the jury, to be determined from all the facts and circumstances in evidence; hence, that the court erred in peremptorily instructing the jury. In view of the clear and unambiguous language of the subsequent will and the fact that it makes a complete and entire disposition of all the property of testatrix, we think that the question was one of law for the trial court, and therefore no error was committed in peremptorily charging the jury to find against proponents in accordance with established and well-settled principles of law laid down in similar cases.

**Peremptory Instruction.**

II. Appellants assign error in the rejection, by the trial court, of the proffered testimony of the witnesses, Stella Robinson and

Charlotte Niebling, respecting the declarations of testrix as to the purpose and intent of her last testamentary instru-
**Declarations: Intention.** ment. The trial court very properly rejected this proffered testimony, for to admit such testimony would be to permit a will to be made by parol, and, in effect, would render impotent our statute (Sec. 507, R. S. 1919), which requires (except, of course, in cases of nuncupative wills) that "every will shall be in writing, signed by the testator, or by some person, by his direction, in his presence; and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator."

As said, in 28 Ruling Case Law, page 280, section 251: "The general rule is that parol testimony is not competent to prove a testator's declarations prior to or after the execution of his will to aid in its construction. Nor are such declarations admissible even if made at the very time of execution. Since the testator's intention is to be ascertained from his written will, his parol declarations of his understanding of the meaning of his will are not admissible for the purpose of interpreting his testament. It is obvious that if verbal declarations were admitted, wills might be overthrown which expressed the intention of one who could not dispute evidence of his declarations, nor give any explanation of them, and thus grave evils would result."

There are, it is true, certain exceptions to the foregoing general rule, as, for instance, where a testator's declarations are sometimes held admissible for the purpose of showing his mental capacity or incapacity to make a will, his liability to or freedom from undue influence, or to establish the contents of a lost will, none of which issues, however, is involved in the present controversy. The cases cited by appellants largely involve such issues and are therefore not applicable to the instant action. As a general rule, the declarations of a testator are rarely, if ever, admissible for the purpose of impeaching the clear and unambiguous language of the will.

In Wooley v. Hays, 285 Mo. 576, a recent utterance of this court, we said: "A will is required to be in writing, and therefore parol evidence as to what the testator said as to his intention, either before or after his will is made, is clearly incompetent. Consequently, the lower court made no error in striking out the oral testimony of the witnesses, Montgomery and James T. Hays, which is excluded." Such has been the uniform ruling of this court upon similar questions from a very early date in the jurisprudence of this State. [Gibson v. Gibson, 24 Mo. 227; Cawthorn v. Haynes, 24 Mo. 236; Hurst v. Von de Veld, 158 Mo. 239.]

The record before us discloses no reversible error to have been committed by the learned trial court. It follows that the judgment below is right, and it is accordingly affirmed. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All the judges concur, except *Graves, J.,* absent.