327 S.W.2d 270 (1959)
In re Trust ESTATE of Ulysses Evans SIDEBOTTOM, Deceased.
A. B. KAMMERER, Trustee, The Board of Trustees of Park College, Residuary Beneficiary under the WIN of Ulysses Evans Sidebottom, Deceased, Respondents,
v.
MISSOURI VALLEY COLLEGE, Appellant.
No. 47251.
Supreme Court of Missouri, Division No. 1.
July 13, 1959.
Motion for Rehearing or to Transfer Denied September 14, 1959.
*271 Frank E. Tyler, William J. Burrell, Dietrich, Tyler, Davis, Burrell & Dicus, Kansas City, Don Chapman, Sr., Chapman & Chapman, Chillicothe, for said respondent.
Christian F. Stipp, Carrollton, for appellant.
Motion for Rehearing or to Transfer to Court en Banc Denied September 14, 1959.
HOUSER, Commissioner.
Ulysses E. Sidebottom, a resident of Livingston County, died testate on March 10, 1946. His will, duly probated, provided numerous specific bequests of sizable amounts of money, including a $30,000 bequest to Park College of Parkville, Missouri (hereinafter "Park"). After providing for the payment of debts, expenses of administration and specific bequests, the testator devised and bequeathed the residuary estate in trust to A. B. Kammerer, to be administered for a 6-year period during which numerous annual gifts were to be made to various beneficiaries, and to be administered thereafter, conditionally, for a period not to exceed four years. The last paragraph of Item XXV provided:
"I further direct the Trustee herein appointed, and his successor, if any, shall as soon as practicable at the end of six years after said Trustee shall come into possession of the property *272 herein devised and bequeathed to him, shall transfer, pay and set over all property, moneys, and funds in his hands as such Trustee to that Presbyterian School located in the west half of the Synod of Missouri, which the Board of Christian Education of the Presbyterian Church in the United States of America located at Philadelphia, Pennsylvania shall designate to receive the same and thereupon this trust shall cease and terminate. Should said Board at the end of said period not designate any such school to receive said property, then the said trust shall continue for a period of not to exceed four years, under the provisions in this will; and if the said Board shall not within said additional period of four years designate any such a school to receive said property, the said Trustee shall pay and turn over to Park College, Parkville, Missouri, all of said property, money and funds in his hands."
The trust funds came into the hands of A. B. Kammerer, trustee, on March 8, 1948. At the end of the ten-year period, and on June 9, 1958, A. B. Kammerer, trustee, filed a petition in the Circuit Court of Livingston County for final settlement and approval of his administration of the trust estate, stating that more than ten years had elapsed since the trustee came into possession of the trust property and that the Board of Christian Education of the Presbyterian Church in the United States of America (hereinafter "the board") during the ten-year period did not designate any school to receive the trust property; reporting the rival claims of Missouri Valley College of Marshall, Missouri (hereinafter "Missouri Valley") and Park, to the residuary estate, which amounted to $147,020.48; asking that the claimants be required to interplead and set out their respective claims and that the court determine to which school the trustee should pay and distribute the trust assets. The circuit court ordered the rival claimants to file petitions setting forth their claims.
Park filed a petition, basing its claim upon the failure of the board within the ten-year period to designate any school to receive the trust property. Park claimed that it was entitled to the trust property under the "clear and unambiguous" terms of the will.
Missouri Valley filed a petition, basing its claim upon the following allegations: On and prior to April 19, 1944 (the date of the execution of the will), on March 8, 1948 (the date the trustee came into possession of the trust funds), and on March 8, 1958 (the date of the expiration of the ten-year period), Missouri Valley was the only Presbyterian school located in the west half of the Synod of Missouri. On none of those dates was Park a Presbyterian school located in the west half of the Synod of Missouri. For years testator had been interested in the financial welfare of both colleges and had expressed his desire and intention to make financial provisions for both schools and after his death to have his estate distributed in part to Missouri Valley and in part to Park. Prior to the making of his will testator conferred with representatives of both schools and with representatives of the board relative to the drafting of his last will and testament, expressing his desire and intention to make provision therein for both schools. The board informed testator that Missouri Valley was experiencing financial difficulties and that the suspension of its operation or its merger with some other Presbyterian school was imminent. The board, in which testator reposed great trust and confidence, was fully advised of testator's intention to make provision in his will for Missouri Valley as well as for Park. Testator requested the board to suggest a suitable provision to be incorporated in his will "which would pass a part of his estate to Missouri Valley, if, after his death and at the time of the distribution of his estate, Missouri *273 Valley was in operation, and which would pass such part of his estate to the successor of Missouri Valley or to the school which resulted from the merger of Missouri Valley with some other Presbyterian School" in case of succession or merger at the time of the distribution of his estate, and which would pass his estate to Park if Missouri Valley was not in operation ten years after his estate was settled and there was no such succession or merger. The board, knowing his desires and intentions, advised and counseled with testator relating to such a provision. There was a fiduciary relationship existing between the board and testator. The board enjoyed his trust and confidence. The board led him to believe that his intention would be executed, and that the board would designate Missouri Valley to receive the property. The board suggested the provision which later appeared in his will as the last paragraph of Item XXV. On April 19, 1944, testator executed his will incorporating that provision, together with a financial provision for Park a specific bequest of $30,000. After the will was made testator discussed it with representatives of Missouri Valley, Park and the board and stated that he had made a bequest to Missouri Valley which would pass to Missouri Valley either six or ten years after his estate was settled, and that the board would designate Missouri Valley to receive the property remaining in his estate, if Missouri Valley was still in operation. After testator's death the board accepted the power of appointment and prepared to exercise the power. In 1948 a representative of the board wrote Missouri Valley as follows:
"I presume someone is keeping close to the Executors of Mr. U. E. Sidebottom's estate. You know, he was the gentlemen up in Chillicothe who left a provisional gift for Missouri Valley. Our Board is involved. * * I had long talks with Mr. Sidebottom and I think I know what he was trying to accomplish."
Thereafter the board undertook a campaign for the removal of Missouri Valley from the list of accredited Presbyterian schools so that Missouri Valley could not be a Presbyterian school in the west half of the Synod of Missouri, but this campaign failed. The board, in order to delay the matter, appointed committees to investigate the operations of Missouri Valley. Investigations resulted in reports favorable to Missouri Valley, recommending that Missouri Valley be designated, but Missouri Valley was not designated within the tenyear period. The board on October 10, 1957, adopted the following resolution:
"It was VOTED that having given long and earnest consideration based upon factual reports and legal advice to our responsibilities under paragraph XXV of the last will and testament of Ulysses E. Sidebottom, deceased, the Board of Christian Education of the Presbyterian Church in the U.S.A. finds no sufficient reasons for exercising the power given to it to designate an alternate beneficiary under said paragraph of Mr. Sidebottom's will. The Board therefore hereby resolves not to exercise said power and directs the Secretary of the Board to notify the trustee under said will accordingly, immediately after March 8, 1958, and to send copies of such notification both to Park College and to Missouri Valley College."
It was further alleged that the action of the board in not designating Missouri Valley was arbitrary, contrary to the recommendations of its committees, not based upon any information upon which it could legally refuse to accept the recommendations of its committees, contrary to the intention and failed to effectuate the desires of testator; that such action destroys the entire plan of distribution of the estate and property of testator, and "is the result of a fraudulent design on the part of said Board to fail and refuse to effectuate the desires and intentions of Mr. Sidebottom"; *274 that at the time of the execution of the will, and prior and subsequent thereto, the board had no intention to, and knew that it would not, designate Missouri Valley to receive the property intended for it; that having accepted the power of appointment the board was required and compelled to designate Missouri Valley because on March 8, 1954, and on March 8, 1958, Missouri Valley was the only Presbyterian school in the west half of the Synod of Missouri; that the board had no power of negative action, no power not to make a designation, and no power to take any action which would result in the property passing to Park; that its action is illegal, arbitrary and fraudulent and that the court should effectuate the plan, desires and intentions of testator, correct the illegal action of the board, exercise the power of designation and order the transfer of the trust assets to Missouri Valley.
To Missouri Valley's petition Park filed (1) a motion to strike on the ground that no basis for relief is stated on behalf of Missouri Valley; that its claim is contrary to the statute of wills; contrary to the statute of frauds; contrary to § 474.430, RSMo 1949, V.A.M.S., directing all courts to have due regard to the directions of the will in all matters concerning wills brought before them, and contrary to § 456.010, RS Mo 1949, V.A.M.S., requiring declarations of trusts of land to be in writing; and that Missouri Valley's claim is an unlawful attempt to impeach an unambiguous will by reference to alleged declarations of a testator; (2) a motion to dismiss the claim, setting up the grounds asserted in the motion to strike, and in addition thereto the defenses of laches and limitations; alleging that the board was given a discretion either to exercise the power by designating a beneficiary or not to exercise the power, and since the board did not exercise the power the court cannot now attempt to exercise a power which by the terms of the will no longer exists; and (3) a motion for judgment on the pleadings. The court sustained the motion for judgment on the pleadings and the motion to dismiss, on the ground that the petition of Missouri Valley does not state a claim upon which any relief can be granted, held that Park is the owner of the trust assets, and directed that they be conveyed and paid to Park. Upon the overruling of its motion for a new trial Missouri Valley appealed from the judgment of the circuit court.
Missouri Valley contends that the court erred in dismissing its petition and in rendering judgment for Park; that its petition states a claim in equity upon which relief can be granted; that testator conferred upon the board a valid, naked, special power of appointment in trust, the execution of which was imperative; that the intention of the testator as gathered from the will and from the attending circumstances, was that the power would be exercised; that that intention must be given effect; that the board had no alternative but to exercise the power of appointment; that the board either failed to exercise the power or fraudulently failed to exercise the power (in either of which events the equity court should exercise the power, on the theory that where an obligation to exercise the power was contemplated by the donor of the power equity will not permit the objects to be disappointed by a failure to appoint), or fraudulently and invalidly exercised the power (in which event the equity court should correct the defective action of the board).
The ultimate question is whether the power given to the board was a mere power, or a power in trust. If it was a power in trust or a power coupled with a trust the donee of the power would have no discretion whether the power should be exercised; it would be imperative that it be executed. Such a power creates a duty in the trustee. It is obligatory on the conscience of the person entrusted, and creates an equitable right in the beneficiary, a right of such nature that it will be protected in a court of equity. McCune's Estate v. Daniel, Mo.Sup., 76 S.W.2d 403, loc.cit. *275 406; 3 Pomeroy's Equity Jurisprudence, 5th Ed., Symons, § 835, p. 275; Perry on Trusts and Trustees, 7th Ed., Vol. 1, § 248, p. 439; 72 C.J.S. Powers § 6, p. 404; 41 Am.Jur., Powers, § 3.
If it was a mere power the exercise of the power by the donee would be purely discretionary and not imperative. The board could execute or not execute the power according to its own judgment and as it pleased. No court could compel or control its discretion or exercise its discretion for it if for any reason it left the power unexecuted. Perry, supra. "Mere powers create no obligation resting on the donee, nor any right in a person who may be benefited by their execution." Pomeroy, supra. "Where the power is not coupled with a trust, A is clothed with a complete discretion whether he will or will not execute it; courts of equity do not control that discretion; if he utterly fails to make any appointment, they do not relieve the expected beneficiaries to or among whom the disposition might have been made." 3 Pomeroy's Equity Jurisprudence, supra, § 1002, p. 983, 1 c. 984.
The determinative factor in deciding whether a power of appointment is a mere power, discretionary in nature, or a power in trust, imperative in character, conferring a property interest upon the objects of the trust, is the intention of the donor. His intention is to be ascertained from the language of the instrument creating the power, or in the light of all the circumstances, including (1) whether there is an express or implied gift over in default of appointment; (2) the imperative or precatory character of the language employed; (3) the relations between the parties. Restatement, Trusts (1935), § 27, Comment (d); 3 Pomeroy's Equity Jurisprudence, supra, § 1002a, p. 986.
Where the donor of the power specifically and expressly provides that if the donee fails to exercise the power a designated person shall be entitled to the property no trust is created, and the person so designated is entitled to the property in default of appointment. Restatement, Second, Trusts, § 27, Comment a. In such case the objects of the power are entitled to the property only if the donee exercises the power of appointment in their favor. Restatement, Trusts (1935), § 27, Comment d. Sugden on Powers, (1856), Vol. 2, p. 153, paragraph 25, expresses it this way: "But where there is a gift over in default of appointment to the objects of the power or to other persons, of course the words of the power cannot operate to vest any estate in the objects of it by implication, if there be no appointment." Burby on Real Property, Second Ed., Sec. 329, says: "The power is not mandatory, of course, if there is an express gift to the objects of the power in default of appointment. In fact, the power is not mandatory in any case where provision is made for takers in default." In discussing the dispute among legal scholars as to whether a power of appointment can be the subject of a trust, Scott points out that Gray (who says not)[1] and Ames (who says that it can)[2] agree "that if the donor of the power made a gift over to others in default of appointment, the gift over would take effect and the objects of the power would not be entitled to the property." Scott on Trusts, Second Ed., Vol. I, § 27. The same authority says that "* * * it is clear that the members of the class are not entitled to the property where the power is not exercised if the donor made an express gift over to others in default of appointment." Idem, § 27.1, p. 217, and further: "Where there is an express gift over in default of appointment, no difficulty ordinarily arises; if an appointment is made the appointees *276 take, and if no appointment is made the property goes to those who take in default of appointment." Idem, § 27.1, p. 219. In 72 C.J.S. Powers § 55, it is said that where a power terminates without having been executed, the subject matter "passes to those to whom it may have been limited in default of execution." And see 96 C.J.S. Wills § 1072. We will not labor the point further except to make reference to those decisions of this court holding that if a power of disposition remains unexercised it leaves the remainder unaffected. St. Louis Union Trust Co. v. Clarke, 352 Mo. 518, 178 S.W.2d 359, and cases cited, loc.cit. 365.
Here the testator specifically and expressly provided that if the board "shall not within said additional period of four years designate any such a school to receive said property, the said Trustee shall pay and turn over to Park College, Parkville, Missouri, all of said property, money and funds in his hands." Under the authorities, supra, there is no difficulty in determining that the donor created a mere power and not an imperative power in trust, in view of the express gift over to another in default of appointment.
This conclusion is buttressed by our interpretation of the language used by the testator in creating the power. In our view the last paragraph of Item XXV created and granted two separate and different powers. In the first place it conferred upon A. B. Kammerer, the trustee, a distinct and independent power in trust (to distribute the trust assets), contingent and subject to a limitation, see In re Rickenbaugh, 42 Mo.App. 328, which was the subject of the grant of the second power. The second power was a discretionary power of appointment, whereby the board was empowered to designate "that school" in the class described to receive the trust assets. While the power given the trustee was imperative upon the occurrence of the contingency, and therefore constituted "a power in trust," the power of appointment given the board depended upon the volition and rested in the discretion of the board. The power given the board was not a power in trust, imperative in its terms. If Missouri Valley was the only Presbyterian school in the west half of the Synod of Missouri, and if testator had intended that Missouri Valley receive the residuary estate without any question, qualification or contingency there would have been no occasion to employ the device of a power of appointment. Testator could have devised the property outright to Missouri Valley or to its Presbyterian successor or to the Presbyterian school with which it should thereafter merge. Instead of devising the property outright to Missouri Valley, or its Presbyterian successor, etc., testator expressly created and granted the power of appointment. There must have been reasons which dictated the course which he chose, namely, to invest the board with the power to appoint or not to appoint "that Presbyterian school" or "any such a school." The testator intended that the board exercise a discretion not only as to the time of designation, but also as to whether the board should make any designation at all.
If we consider the "attending circumstances," which Missouri Valley contends we can and should consider,[3] we are more than ever confirmed in the belief that the testator intended to confer a discretionary, and not an imperative, power upon the board. The attending circumstances indicate that Missouri Valley was in failing circumstances, that its demise appeared to be imminent, that its financial condition was such that within the next few years it might discontinue operations or be succeeded by or merged with another Presbyterian *277 college. Testator was familiar with the situation. He was in touch with the board and with the representatives of both colleges. Item XXV, considered in the light of these circumstances, would support the conclusion that after his death testator wanted to make it possible to contribute to the perpetuation of Missouri Valley, if it were a going concern, or to its Presbyterian successor or other Presbyterian college with which it might be merged, if advisable, but in case Missouri Valley discontinued operations or the donee of the power deemed it inadvisable to designate its successor, etc., or in case of the failure of the donee of the power, for any reason, to act, testator wanted the money to go to Park. So he created a power of appointment and vested the donee with the authority to decide at any time within a ten-year period whether Missouri Valley or its Presbyterian successor or the Presbyterian college with which it might merge should receive the designation, depending upon condition, financial need, stability, likelihood of survival, propriety, etc. (matters of discretion), and if no such designation during the period was deemed advisable, for one reason or another, the property was to go to Park.
The authorities cited by Missouri Valley in support of the theory that the power in question was a power in trust (Annotation 80 A.L.R. 503; 41 Am.Jur., Powers, §§ 90, 92, 103) cite cases involving situations in which in the instrument creating the power there was no provision for the disposition of the property upon nonexercise of the power. They specifically exclude from the operation of the rule cases like the instant case, in which there is an express gift over in default of appointment. The discussion in the annotation in 80 A.L.R. 503 opens by excluding "cases where provision is made for disposition of the property upon nonexercise of the power" as "of little or no value in the discussion." Missouri Valley's quotation from § 90 of 41 Am.Jur., Powers, omits that portion of the section which reads: "Ordinarily, where a power is unexercised, it becomes inoperative. * * If a power of appointment is not exercised and there is a gift in default of appointment, the property passes according to such gift." Missouri Valley's quotation from § 92 of 41 Am.Jur., Powers, omits that portion of the section which says: "Certain cases sometimes cited in connection with the present subject have been excluded as of little or no value in the discussion, among which are * * * cases where provision is made for disposition of the property upon nonexercise of the power * * *."
Our determination that the power conferred upon the board was a mere power, and not a power in trust, disposes of Missouri Valley's contention that there was an improper exercise of a power in that the board acted fraudulently, illegally and invalidly under the power. Missouri Valley's thesis that the board acted under the power; that there was a defective execution of a power; that by the adoption of the resolution of October 10, 1957, the board accepted the power and acted upon it, is not supportable. All of the facts, including the resolution, indicate that this is not a case of the defective execution of a power, but is a case of failure to act, a total nonexercise of a power. Ordinarily equity will not relieve against the nonexecution of a mere power. 72 C.J.S. Powers § 55. According to Sugden it is "an immutable rule, that a non-execution shall never be aided." Sugden on Powers (1856), Vol. 2, Sec. 158. (The author points out that he refers to mere powers, and not to trusts.) Pomeroy makes it clear that the rule that equity refuses to aid the nonexecution of powers relates only to mere powers, and does not apply to powers in trust. 3 Pomeroy's Equity Jurisprudence, supra, § 835. The reason is that mere powers create no obligation resting upon the donee, nor any right in a person who may be benefited by their execution. In order for Missouri Valley to have made a case in fraud arising out of the nonaction of the board, it *278 would have been necessary for the board to be obligated to act. The board not having been obligated to appoint Missouri Valley, owed Missouri Valley no duty to appoint, so that there is no basis for the claim of fraud arising out of failure to appoint. No fraud can be committed by one against another to whom he owes no duty. Brown v. Fidelity Union Trust Co., 126 N.J.Eq. 406, 9 A.2d 311, loc. cit. 330. The authority cited by Missouri Valley in support of its theme that there was a fraudulent exercise of the power (41 Am.Jur., Powers, § 45) cites cases in which the power in question was not a mere power, but was a power in trust, or a power coupled with an interest as well as a trust. That authority, however sound it may be in that situation, has no application here.
Missouri Valley contends that the declarations of the testator made before and after the execution of the will are admissible to explain the extent of the power conferred upon the board; that by Item XXV testator intended, at the expiration of six or ten years from the time his estate was settled, an absolute imperative that the board designate Missouri Valley to receive the property, if Missouri Valley was in operation, and that to fail to exercise the power is to frustrate the intention of the testator. This contention runs counter to the statute of wills, § 474.320, RSMo 1949, V.A.M.S. None of that part of Missouri Valley's petition alleging declarations and statements of the testator as to his desires, intentions, etc., with respect to the disposition of his property would have been admissible in evidence at a trial of this case. The written will cannot be impeached by declarations of the testator as to his desires and intentions with respect to the disposition of his property. Winkel v. Streicher, 365 Mo. 1170, 295 S.W.2d 56; Bernheimer v. First Nat. Bank of Kansas City, 359 Mo. 1119, 225 S.W.2d 745. Where the language used in a will is clear and "of well-defined force and meaning, extrinsic evidence of what was intended in fact cannot be adduced to qualify, explain, enlarge, or contradict this language, but the will must stand as it was written." Schouler on Wills, 6th Ed., Vol. 2, §§ 906, 908, cited with approval in Neibling v. Methodist Orphans' Home Ass'n, 315 Mo. 578, 286 S.W. 58, loc. cit. 64, 51 A.L.R. 639. All of the allegations in Missouri Valley's petition with respect to testator's statements would or should have been stricken by the court, had the motion to strike been passed upon. They have no place in this case, and are not to be considered by us upon this appeal as explanatory of the extent of the power testator conferred upon the board.
The court below properly dismissed the petition of Missouri Valley and properly entered judgment for Park on the pleadings. The judgment is affirmed.
COIL and HOLMAN, CC., concur.
PER CURIAM.
The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.
All of the Judges concur.
NOTES
[1] Gray, Powers in Trust and Gifts Implied in Default of Appointment, 25 Harv.Law Rev. 1, (1911).
[2] Ames, Lectures on Legal History (1913) 290.
[3] In Presbyterian Orphanage of Missouri v. Fitterling, 342 Mo. 299, 114 S.W.2d 1004, Citizens' Bank of Lancaster v. Foglesong, 326 Mo. 581, 31 S.W.2d 778, and Cook v. Higgins, 290 Mo. 402, 235 S.W. 807, this court considered evidence of the surrounding circumstances in determining the extent of a power of disposition.