JOSEPH N. PASTENE, executor, *vs.* ROSA BONINI & another.

Suffolk.    January 24, 1896. — May 20, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, LATHROP, & BARKER, JJ.

*Meaning of " My Wife " in a Will.*

The designation "my wife" in a will will be held to mean the woman to whom the testator had been married and with whom he had lived for thirty-five years, down to the time of his death, and whom he had held out to the world as his wife, and not another woman, his lawful wife, whom he had deserted in a foreign country forty years before he died, if that conclusion seems justified by the attendant circumstances in connection with the will.

PETITION to the judge of probate of the county of Suffolk, by Joseph N. Pastene, executor and trustee under the will of Louis Bonnie, otherwise called Luigi Bonini, praying the instructions of the court as to which of two claimants was the lawful widow of the testator. The judge entered a decree in favor of Mary J. Bonnie of Boston, and on an appeal to this court, *Holmes,* J. having reversed the decree and decided that Rosa Bonini of Italy was the legal wife, the petition was amended so that the question of construction of certain sections of the will might be presented. These sections are as follows:

"3d. I intentionally and purposely omit making any bequest or devise or any other provision in favor of my step-daughter and her issue. I likewise intentionally and purposely omit making any provision in favor of any other step-child or step-children of mine, if any.

"4th. I bequeath to my wife all articles of personal, domestic, or household use or ornament, including my furniture, books, except books of account, pictures, provisions, consumable stores, and household effects which at the time of my death shall be in, about, or belonging to the house in which I may reside at my decease.

"5th. I devise and bequeath all my real estate of every kind, and all my personal estate and effects whatsoever, not otherwise disposed of by this my last will or any codicil thereto, unto Joseph Nicholas Pastene, an attorney at law of Boston, Massachusetts, to have and to hold to him and his heirs and assigns, but upon the following trusts, namely: First. To pay over the net income thereof to my wife during her natural life. Said provisions in favor of my wife are made to her in lieu of her legal rights. Second. Upon the death of my said wife to transfer and convey all the property in his hands, absolutely, and free and discharged of all trusts, unto the surviving one of my sons Joseph and Aldobrando, my only children by my first wife, one of whom died in tender age and the other is, I believe, still living in Italy, if living, to have and to hold to him and heirs. Third. If my said supposed living son be not then living, then to likewise transfer and convey all the property in his hands unto the lawful children, if any, in equal shares, and to the lawful issue of any deceased child by right of representation, of my said supposed living son, absolutely, and free and discharged of all trusts to have and to hold to such children and heirs. Fourth. In the event that my said supposed living son be not living at the death of my wife, and there shall be no lawful issue of his surviving, then I direct my said trustee to transfer and convey the same property to my nearest next of kin in equal degree, always excluding in computing degrees of kindred my aforementioned step-daughter and her issue, and any other step-child or step-children, and issue of said step-children of mine, in equal shares, to have and to hold to them and heirs."

The case was reserved for the determination of the full court. The facts appear in the opinion.

*J. H. Keenan*, for the executor, read the papers in the case.

*R. M. Morse*, for Rosa Bonini.

*P. M. Keating*, for Mary J. Bonnie.

LATHROP, J.  The question before us is as to the person entitled to take under the designation " my wife" in the fourth and fifth clauses of the will of the testator.

In *Hardy* v. *Smith*, 136 Mass. 328, a woman describing herself as " Mary M. Perkins, wife of Ezra G. Perkins," made a will containing this clause: " I give and bequeath to my husband one half of all my personal property."  In fact the testatrix was not the wife of Perkins, but of one Hardy, and the latter contended that he was entitled to take this one half as her husband.  But this court held that the question was to be determined by the intention of the testatrix; that the husband had no vested right to be made a legatee, and could not become such by estoppel, or as a consequence of immoral or reprehensible provisions in the will, but only by the intention of the testatrix.  See also *In re Petts*, 27 Beav. 576; *Doe* v. *Rouse*, 5 C. B. 422; *Powers* v. *McEachern*, 7 S. C. 290.

Taking the attendant circumstances in connection with the will, we have no doubt that the testator intended by the words " my wife" to designate Mary J. Bonnie, to whom he had been married, and with whom he had lived for thirty-five years, down to the time of his death, and whom he had held out to the world as his wife, and not Rosa, his lawful wife, whom he had deserted in Italy forty years before he died.  In the third clause of the will, he speaks of his step-daughter, and it is found that she was the daughter of Mary by a former husband.  In the fourth clause he gives to his wife, among other things, " provisions and consumable stores."  These must have been intended for the woman who lived with him, and the words " my wife" in this clause cannot be intended to refer to two different persons, and the intent therefore is clear to give to Mary everything mentioned in that clause.  In the fifth clause he gives the residue of his estate to a trustee, to pay the net income to " my wife" during her natural life, and on her death to pay the principal to the survivor of two persons named, who are described as " my

only children by my first wife." The persons named were the children of the testator and of Rosa. If he had intended to refer to Rosa by the words "my wife," he would have described these persons as her children, and not as the children of "my first wife."

The only words which throw any doubts upon the intention of the testator are the following in the fifth clause: "Said provisions in favor of my wife are made to her in lieu of her legal rights." But the testator may have supposed that the woman whom he had married, and who had been held out to the world as his wife, had some legal rights in his property. See *Klein* v. *Hayck*, 5 Redf. (N. Y.) 210; *Schult* v. *Moll*, 31 N. Y. State Rep. 979. However this may be, we have no doubt that the testator intended by the use of the words "my wife" to designate Mary J. Bonnie and not Rosa, the lawful wife.

*Decree accordingly.*