WILL OF WEYMOUTH: WEYMOUTH, Appellant, .vs. WEY-
MOUTH and others, Respondents.

*January 19—May 15, 1917.*

*Wills: Construction: Gift "to my wife," when person intended is not
wife: "So long as she shall remain single:" Nature of estate de-
vised: Limitation.*

1. A gift by will "to my wife," where there is no doubt as to the per-
son intended, is a good gift even though such person was not the
wife of the testator.
2. A will, dictated and executed by testator during his last illness,
provided that all of his property should "go to my wife E. W. so
long as she shall remain single. In case of her marriage she
shall have the homestead . . . , and one third of all other prop-
erty . . ." E. W. was not the testator's wife, but had lived with
him and been recognized as such for about nineteen years. She
had previously been married to one G., who was still living, and
they had never been divorced. Testator knew of that marriage
and that G. might be living, but believed him to be dead. *Held*,
that E. W. was testator's wife, within the terms of the will,—
his intention, and what he meant by the phrase "so long as she
shall remain single," being that all the property should go to
E. W. so long as she should maintain, after his death, the status
which she occupied at the time the will was made, *i. e.* so long as
she did not again marry or return to G. as his wife.
3. Under such will E. W. took, not merely a life estate, but absolute
title to all the property, subject only to the limitation stated.

APPEAL from a judgment of the circuit court for Eau Claire
county: JAMES WICKHAM, Circuit Judge. *Reversed.*

This is a proceeding to construe the following will:

"Superior, Wis., March 6th, 1914.

"I, Daniel A. Weymouth, do hereby make my last will and
testament:

"That it is my wish that all of my property go to my wife·
*Elizabeth Weymouth* so long as she shall remain single.

"In case of her marriage she shall have the homestead
known as Nos. 1703-1705 58th St., Superior, Wis., and one
third of all other property after all debts and accounts are
paid, and the balance to go to my brothers and sisters.

"L. A. Potter,                    DANIEL A. WEYMOUTH.
"Herman Woll,
          "Witnesses."

The county court found that Daniel A. Weymouth died testate March 9, 1914, a resident of the city of Superior, Wisconsin, and at the time of his death was the owner of real and personal property valued at $18,000; that he left surviving him *Elizabeth Weymouth,* the proponent, who claims to be his widow, *Charles B. Weymouth* and *Fred B. Weymouth,* brothers, *Kitty Howe,* a sister, and Newton or Nunez Weymouth, who died September 25, 1914, leaving him surviving his widow and two minor children; that the proponent, *Elizabeth Weymouth,* was married to one Joseph Gilling (or Gelling) in Michigan December 12, 1886, at which time she was about eighteen years of age and said Joseph was twenty-two; that said parties were never divorced, as deceased knew; that said Joseph was alive on the 27th of March, 1915, and was then a resident of Illinois and has never married again and is still the lawful husband of proponent, if alive; that from the date of marriage proponent lived and cohabited with Gilling as his lawful wife in Michigan until on or about 1892, during which time she bore three children, and on or about the year last mentioned proponent left said Joseph Gilling and children and resided elsewhere, and as to the birth and existence of said children deceased was well informed at the time he and proponent commenced living together; that on or about the year 1895 proponent took up her residence in the city of Superior, Wisconsin, with the deceased, Daniel A. Weymouth, at which time nor since was any marriage ceremony performed, although proponent and said deceased lived together and represented to their friends and acquaintances that they were married, and were recognized and treated in the community in which they lived as husband and wife to the time of the death of deceased, March 9, 1914. It also appears, pursuant to stipulation, that during the time last above mentioned and in said city and vicinity the proponent, *Elizabeth Weymouth,* was known by the name of *Bessie Weymouth,* and that *Elizabeth Weymouth,* who claims to be the

widow of deceased, and *Bessie Weymouth,* who from time to time signed deeds with him, are one and the same person.

The court concluded that the testator, in willing his property to said *Elizabeth Weymouth* "so long as she shall remain single," intended she should have it regardless of whether or not her husband, Joseph Gilling, was living or dead; it was to be hers so long as she should remain single, or until her remarriage to some one other than Gilling, in which case she was to have the homestead and one third of all other property after all debts were paid; and the court ordered and adjudged that "under said will said proponent, *Elizabeth Weymouth,* takes a life estate in all the testator's property, which estate is, however, subject to be determined by her remarriage, in which case the homestead and one third of all other property of deceased, after all debts and accounts are paid, remainder to be equally divided among his brothers and sisters."

The case was appealed to the circuit court for Douglas county and a change of venue by stipulation taken to Eau Claire county.  The circuit court confirmed the findings of the county court and found in addition thereto that "at the time of the execution of said will the deceased, Daniel A. Weymouth, believed that said Joseph Gilling was dead;" and concluded that proponent took nothing under the first clause of the will, but took the homestead and one third of all other property after payment of debts for her sole use and benefit forever.

Judgment was ordered reversing the judgment of the county court appealed from and adjudging and determining the rights of the parties and remitting the case to the county court for further proceedings.  Judgment was entered accordingly, from which this appeal was taken.

*D. E. Roberts* of Superior, for the appellant.

For the respondents there was a brief by *J. B. Weymouth*

of Yale, Michigan, and *Grace, Hudnall & Fridley* of Superior, and oral argument by *George B. Hudnall.*

The following opinion was filed February 13, 1917:

KERWIN, J.    The controversy here is upon the construction of the will of Daniel A. Weymouth.    There is practically no dispute upon the facts.    The question arising upon construction of the will is one of intention of the testator.

It is established that the proponent was married to Gilling and had not been divorced; that the testator, Daniel A. Weymouth, believed that Gilling was dead.    But it also seems quite clear from the evidence and findings that he did not know that he was dead and must have realized that he might be living at the time of the execution of the will.

It is also established that deceased and proponent were not married, but lived together as husband and wife for about nineteen years, deceased holding out proponent as his wife during all of this time and the community believing that she was his lawful wife.    The testator was informed during his last illness that he was liable to die suddenly and dictated his. will in contemplation of death.    The will was made by a layman and not artistically worded.

The cardinal principle to be observed in the construction of wills is the intention of the testator.    *Donges's Estate,* 103 Wis. 497, 79 N. W. 786; *Pabst v. Goodrich,* 133 Wis. 43, 113 N. W. 398; *Will of Bouck,* 133 Wis. 161, 111 N. W. 573, 113 N. W. 452; *Albiston's Estate,* 117 Wis. 272, 94 N. W. 169; *Moran's Will,* 118 Wis. 177, 96 N. W. 367; *Will of Waterbury,* 163 Wis. 510, 158 N. W. 340.

There are many circumstances in the record tending to show that the deceased intended to give his property to proponent if she did not again marry or return to Gilling as his wife, and this is what he meant by the phrase "so long as she shall remain single."    The will on its face, in connection with the facts and surrounding circumstances appearing in

the record, is quite persuasive that the property was not devised to proponent if she were single, but so long as she should maintain the status which she occupied at the time of making the will; and the words of the will, "so long as she shall remain single," had reference to her status at the time the will was made, whether Gilling was dead or not. Her status as his wife was in the mind of the testator when he made the will. He knew proponent was not his lawful wife and also knew that her lawful husband might be living, although he believed him to be dead. The devise was not on condition that Gilling were dead, but was to proponent "so long as she shall remain single." Obviously the intention of deceased was that proponent should have all of his property if she continued to maintain the status which it was understood she occupied at the time the will was made.

It is doubtless true that if the testator intended by the will that proponent should not take if she were not a single woman, then she could not take if Gilling were living (*Stark v. Conde,* 100 Wis. 633, 76 N. W. 600), but we do not think such was the intention of the testator under all the circumstances of the case. The record shows that the testator and proponent lived happily together as husband and wife and the testator accumulated quite a substantial estate, doubtless with the assistance of proponent. She was to him a good helpmate and companion, performed all the duties of a faithful wife, although she was not a lawful wife. It is quite clear from the record that he desired to give her his property so long as she should maintain after his death the status which she occupied during his life. The record shows that he desired that she should not remarry or return to Gilling. Proponent testified: "I don't suppose he wanted me to go back to Gelling after living here so long. If he [Gelling] ever showed up and tried to get me to go back, Dan [testator] would have resisted it. He did not want me to go back to Gelling after his death."

A gift "to my wife," where there is no doubt as to the person intended, is a good gift even though the devisee is not the wife of devisor. Testator had no other "wife;" proponent was his wife within the terms of the will. *Gelston v. Shields,* 78 N. Y. 275, 280; *Pastene v. Boni,* 166 Mass. 85, 44 N. E. 246; *Elliott v. Elliott,* 117 Ind. 380, 20 N. E. 264. Designation "wife" identifies the person, but is not a condition to take. *Jones's Estate,* 211 Pa. St. 364, 60 Atl. 915.

We are convinced that the gift was not on condition that proponent was the lawful wife of testator. It was to the woman whom he lived with as his wife for nineteen years and whom he held out and represented as his wife and whom the public understood to be his wife. The gift was an absolute gift to her provided she entered into no other matrimonial relations or returned to Gilling as his wife. *Dicke v. Wagner,* 95 Wis. 260, 70 N. W. 159; *Pastene v. Boni, supra; Gelston v. Shields, supra; Jones's Estate, supra.*

It is contended, however, by counsel for respondents that in any event the proponent took only a life estate. We cannot agree with counsel in this contention. The will by its terms gave absolute title to the property subject to the limitation specified therein. The language of the gift, if the testator so intended, is sufficient to transfer absolute title to the property, real and personal, to the proponent, subject to be defeated by breach of the limitation in the will. Sec. 2278, Stats.; *Estate of Pierce,* 56 Wis. 560, 14 N. W. 588; *Dew v. Kuehn,* 64 Wis. 293, 25 N. W. 212; *Little v. Giles,* 25 Neb. 313, 327, 41 N. W. 186; *Roberts v. Lewis,* 153 U. S. 367, 14 Sup. Ct. 495; *Weir v. Michigan S. Co.* 44 Mich. 506, 7 N. W. 78; *Davis v. Ripley,* 194 Ill. 399, 62 N. E. 852; *Crain v. Wright,* 114 N. Y. 307, 21 N. E. 401.

We think it clear under the foregoing authorities and others which might be cited that the proponent took an absolute estate forever in the property devised subject to be defeated by the limitation imposed.

In the instant case there is nothing in the will tending to show that an estate less than an absolute title was intended, but on the contrary the will on its face, together with the facts and circumstances, evinces an intention on the part of the testator to give the property absolutely to proponent subject to the limitation. *Verrinder v. Winter,* 98 Wis. 287, 73 N. W. 1007; *Dew v. Kuchn,* 64 Wis. 293, 25 N. W. 212; *Summit v. Yount,* 109 Ind. 506, 9 N. E. 582; *Beatty v. Irwin,* 35 Ind. App. 238, 73 N. E. 926; *Bennett v. Packer,* 70 Conn. 357, 39 Atl. 739; *Becker v. Becker,* 206 Ill. 53, 69 N. E. 49.

In connection with the foregoing cases it should be observed that in the first clause of the will in the instant case the intention of the testator is plain that the proponent was to take all the property of the testator absolutely, subject to the limitation, "That it is my wish that all of my property go to my wife *Elizabeth Weymouth* so long as she shall remain single."

It follows that the proponent is entitled to the property, real and personal, of the testator, Daniel A. Weymouth, absolutely and forever, subject to the limitation named in the will as hereinbefore defined; and in case the said proponent shall marry again or return to said Gilling and live with him as his wife, then and in such event the proponent shall have the homestead and one third of all other property absolutely and forever after all debts and accounts are paid.

*By the Court.*—The judgment of the court below is reversed, and the case remanded with instructions to render judgment in accordance with this opinion and remit the record to the county court for further proceedings according to law.

VINJE, J., took no part.

A motion for a rehearing was denied, with $25 costs, on May 15, 1917.