WILL OF RICHTER: WOEHLER, Administratrix, Appellant, vs. BOHNERT, Administratrix, Respondent.

*March 8—April 3, 1934.*

*Charles F. Millmann* of Milwaukee, for the appellant.

For the respondent there was a brief by *Kersten & McKinnon* of Milwaukee, and oral argument by *C. J. Kersten*.

WICKHEM, J.    The testatrix and Emma Bauer were twin sisters. They came to this country from Germany. From about the year 1895 testatrix and Emma Bauer lived together continuously until the death of testatrix in 1929. They owned in common three real-estate mortgages of the total value of $12,200. On September 9, 1921, testatrix and Emma Bauer each made separate wills, dated the same day, written in the German language, with identical provisions except as to the transposing of names, and with the

same attesting witnesses. Testatrix's will, translated into English, reads:

Milwaukee, Wis., Sept. 9, 1921.

### My Testament and Will.

I the undersigned wish that immediately after my death my property which consists of half of our common property fall to my sister Emma Bauer. After her death the residue shall be divided according to merit to my nieces,

Freda Wehlor nee Bauer
Hedwig Bohnert nee Grobe
Alice Desselberger Grobe

(And to my nephew)

Walter Braeuer

$500 which we, Emma Bauer and Wanda Richter, have loaned to Victor Wehlor and Mrs. Freda Wehlor may be added to the share of my niece Freda Wehlor, nee Bauer, if this sum is not yet repaid at that time.

(Signed) Wanda Richter, nee Bauer
Milwaukee, Wis. 9th Sept. 1921
616 Garfield Ave.

(Signed)
Sept. 16, 1921
Walter E. Landisch
616 Garfield Ave.
Milwaukee, Wis.

Sept. 16, 1921
Fred C. Berg
790 7st.
Milwaukee, Wis.

The court held that the provisions of this will vested Emma Bauer with a life estate in the property of testatrix, with a remainder in equal shares to the three nieces and nephew named in the will.

It is the contention of the appellant that the court was in error; that the will, properly construed, gives to Emma Bauer a fee rather than a life estate, and that the phrase "after her death the residue shall be divided according to merit to my nieces and nephew" is either (1) wholly ad-

visory in character, or (2) void for uncertainty. Respondent contends that the will indicates a purpose to give only a life estate to Emma Bauer, and that upon her death the residue is to be divided equally among the nephew and nieces as was held by the court.

Certain rules of construction may be passed with simply a statement of them, as they are too well established to warrant extended consideration. The first is that all rules of construction yield to the cardinal rule that the words of a will are to be construed so as to give effect to the intention of the testatrix, which intention is to be ascertained from the language of the will itself, in the light of the circumstances surrounding the testatrix at the time of its execution. *Will of Fouks,* 206 Wis. 69, 238 N. W. 869; *Will of Cuppel,* 206 Wis. 586, 240 N. W. 144; *Will of Weed,* 213 Wis. 574, 252 N. W. 294. It must also be construed, if possible, so as to give effect to every part thereof, and a construction is to be preferred which will sustain the provisions of the will rather than to defeat them. *Will of Southard,* 208 Wis. 148, 242 N. W. 583. Appellant contends, and it is not seriously in question under the authorities, that words of inheritance are not necessary to convey a fee. *Will of Wagen,* 185 Wis. 110, 200 N. W. 765; *Will of Weymouth,* 165 Wis. 455, 161 N. W. 373. Provisions in a will are not to be so construed as to cut down a gift made in positive and clear terms in a prior provision unless this is done by the use of words definite in meaning and in positive terms expressive of such an intent. *Moore v. Moore,* 138 Wis. 602, 120 N. W. 417; *Will of Weymouth, supra.* The court can neither make a will for the testator nor distort its construction to accomplish its own idea of what is equitable. *Will of Schilling,* 205 Wis. 259, 237 N. W. 122; *Will of Schaefer,* 207 Wis. 404, 241 N. W. 382.

The first sentence of the will, standing alone, is clearly sufficient to vest a fee in Emma Bauer, in spite of the lack

of words of inheritance. The second sentence, taken in connection with the first, plainly evidences an intent to cut the fee to a life estate. The direction to divide the property at the death of Emma Bauer is mandatory, and when it is also considered that words of inheritance are not used in the first sentence, the will seems plainly to manifest an intention to give to Emma Bauer a life estate and not a fee. In *Knox v. Knox*, 59 Wis. 172, 18 N. W. 155, the will contained the following clause:

"I give, devise, and bequeath unto my wife, M., her heirs and assigns forever, all my real and personal estate, . . . having full confidence in my said wife, and hereby request that at her death she will divide equally . . . between my sons and daughters [naming them] all the proceeds of my said property, real and personal, . . . hereby bequeathed."

This was held to vest the widow with a life estate in spite of the fact that words of inheritance were used and the wife merely requested to divide the property. In the case of *Tabor v. Tabor*, 85 Wis. 313, 55 N. W. 702, the testator, after devising all his estate to his wife, "the real estate in fee simple, and the personal estate by a like absolute ownership," proceeds: "I do this in full trust and confidence that she will provide for the distribution of the same by her last will and testament among our children [naming them] in such proportions as shall be just and right." This court said:

"Had he stopped here, the argument would be very strong that he intended these words to be obligatory upon his wife, notwithstanding the previous devise of a fee, and the case would be in this respect very like the *Knox Case*. . . ."

The will under examination in this case evidences a much clearer intent to create a life estate than did the wills in either of the cases above cited, and this for two reasons: First, no words of inheritance are used in the clause containing the gift to Emma Bauer, and second, there is

nothing of a precatory character in the second sentence of the will directing division of the property after the life tenant's death. This conclusion as to the intention of the testatrix is supported by the conclusions of several text-writers. In Thompson on Construction of Wills, p. 551, § 429, it is said:

"Thus, a life estate is implied from a devise over after the death of the first taker."

In 2 Page on Wills, p. 1646, § 985, it is said:

"If the duration of the estate . . . is not clear, a gift over of what is not disposed of tends very clearly to show that the first devisee took only a life estate."

A great deal of attention has been given in the briefs to the phrase "nach verdienst vertheilt wirdt." It is contended by the appellant that however valid the above conclusions would be had this phrase been omitted from the second sentence of the will, the phrase so qualifies the sentence as to indicate that it was merely advisory and not intended to cut down the gift to Emma Bauer from a fee to a life estate. We cannot assent to this conclusion, whatever meaning be given to the phrase in question. It does not in any manner modify or weaken the positive direction that the property be divided at the death of Emma Bauer. It was the view of the trial court that while the phrase in question may literally be translated into English as "shall be divided according to their deserts" or "according to their merits," a standard or idiomatic translation of the German phrase "nach verdienst" is "duly." The trial court concluded that if the phrase means "duly divided" it may reasonably be construed to mean "equally divided." It was further concluded that if the phrase means "equal to their deserts or merits," all of the remaindermen can be said to be equally related to testatrix and thus equally deserving, in the absence of a showing that any of them are undeserving. Appellant contends that the phrase in question at least negatives an intent that an equal division

be made; that no person is named to make the division, and no measure is given to determine the standard by which the merit of the four remaindermen is to be fixed.

We proceed to the consideration of this question upon the assumption that the phrase in question is open to at least two possible constructions: First, that the estate is to be divided according to the present "deserts" or "merits" of the remaindermen, and second, that the division is to be based upon their future "deserts" or "merits." In arriving at a determination of the intention of the testatrix it is helpful to consider the circumstances of testatrix. The four remaindermen and her twin sister constituted her next of kin and heirs at law. Her relations with them were extremely close and affectionate. Their place in her affections and regard is evidenced not only by the record generally, but by the fact that she gives the sister a life estate and names the three nieces and nephew as remaindermen. Further than this, the will is identical, except for the transposition of names, with a will made on the same day by Emma Bauer, and it is obvious that each had in mind the same objects of bounty. Whatever difficulties the will presents, there is no doubt that each of the sisters regarded the three nieces and nephew as the persons to whom in some proportion their estates were ultimately to go. It is not clear to us that it makes any difference which translation of the will be accepted. If the will be construed to mean that the remaindermen are to take because they are deserving, or "as is their due," then the clause means to vest the remainder equally in the four. If, on the other hand, the clause be translated to mean "according as they shall deserve," then it must be concluded that testatrix intended to vest the life tenant with the power to determine by appointment the proportions in which the four were to take the remainder. It is clear that nothing had happened up to the time when the wills were executed

which would lead to a conclusion on the part of testatrix or her sister that the four were presently unequal in merit or deserts, and we conclude that it was the intention of each that in the absence of an appointment in the future by the survivor, based upon some subsequent developments, the remaindermen were to take in equal shares. Hence, giving to the clause the construction or meaning most favorable to the appellant, it must be held, in the absence of an appointment in different proportions by the life tenant, that the division on her death was to be in equal shares.

This conclusion compels an affirmance of the judgment.

*By the Court.*—Judgment affirmed.