ZUELLA ROBERTSON, formerly ZUELLA JONES, v. WILLIAM S. JONES, CHARLES A. JONES, GEORGE A. L. JONES, MATTIE FOX, ETTA LEVECK, ANNA JAYNE, STELLA CLIFFORD and DELLA LYON, Appellants.—136 S. W. (2d) 278.

Division One, January 23, 1940.

*Harvey E. Hartz* for appellants.

*William E. Carson, David P. Dabbs* and *J. Gordon Siddens* for respondent.

·DOUGLAS, J.—This question for determination is whether a divorce and property settlement revoke a provision of a will. The statutes have no provision for revocation based on˙such circumstances. Therefore, in reaching a decision we must first ascertain whether revocation by implication is recognized in this State.

The question arises from these facts. John M. Jones married Zuella Robertson, the plaintiff. Two years after his marriage, in 1927, he made a will leaving his property in equal shares to his mother and to his "beloved wife, Zuella Jones." Then in 1935 in connection with a suit for divorce he made a property settlement with his wife. In consideration of a substantial cash payment she released all her rights in his property including her inchoate right of dower. As part of the settlement she joined in a transfer of the same real property which constitutes his estate and in which she is now seeking to establish her interest. The divorce was granted. Six weeks later he died without making a new will. His 1927 will was probated. She brings this action for determination of title and partition against all his brothers and sisters who are his only heirs, his mother having predeceased him. She claims one-half of the real estate under the devise to her. The defense is based on the theory that the divorce accompanied by the property settlement constituted a revocation of the devise so that she has no interest in the property. Judgment was for the plaintiff and the defendants have appealed.

The revocation of a will, or a part thereof, is governed by statute. Section 520, Revised Statutes 1929 (1 Mo. Stat. Ann., p. 315) states that "no will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, except by˙a subsequent will, in writing, or by burning, canceling, tearing or obliterating the same, by the testator, or in his presence, and by his consent and direction." Then in Section 521 are now found "the cases hereinafter mentioned." There, it is provided that if a testator shall marry and die leaving issue surviving or if issue of such marriage are born after his death then his will shall be deemed revoked unless provision shall have been made for such issue. Formerly, there was another section immdiately following this one and also within "the cases hereinafter mentioned" which specified that the will of an unmarried woman was deemed revoked by her subsequent marriage. This section was repealed in 1927. Succeeding sections modify common-law rules of revocation and are not pertinent.

█ In no section is there any provision that a divorce and settlement operate as a revocation. Nor is there any provision incorporating implied revocation as an exception to Section 520, such as we find in other states. Even so, it is argued that we should apply the common-law doctrine of implied revocation and extend it to cover cases of divorce and settlement. It is true the common law of England, so far as it is applicable, is in force in this State except where changed by

statute. [Sec. 645, R. S. 1929, 7 Mo. Stat. Ann., p. 4894.] In our opinion the statutes have abrogated this common-law doctrine of implied revocation and are exclusive. Their very wording indicates this and it is entirely competent for the Legislature to enact such laws as it deems proper regarding wills because the right to dispose of property by will is not a natural right. [Barnett v. Bellows, 315 Mo. 1100, 287 S. W. 604.]

The history of implied revocation under the common law is interesting. The English Courts developed a theory that an alteration in the circumstances of the testator either furnished a presumption of intention to revoke a previous will or, *ipso facto*, did revoke such a will. This was held to be an exception to the Statute of Frauds. The Ecclesiastical Courts held that marriage and birth together was such a change in circumstances as to amount to an implied revocation. Confusion resulted because the rulings of the Ecclesiastical Courts and the Courts of Common Law in the application of the doctrine of implied revocation were not in harmony. [Marston v. Roe, etc., 8 Ad. & E. 14 (1838).] The Wills Act was passed to end this confusion. It expressly provided that no will should be revoked by "any presumption of intention on the ground of an alteration in circumstances;" and that a will was revoked by subsequent marriage. The usual provisions for the revocation of a will by a subsequent will or by burning, etc., were also included. [7 Wm. IV & 1 Vict. Cap. 26.] Marriage or birth of children subsequent to making a will seem to have been the chief causes of the origin of the doctrine. Our statutes have met these situations by Section 521 and by other sections preserving marital rights. They are comprehensive and leave no field for the operation of the doctrine of implied revocation.

This court has heretofore announced, but without discussion, that revocation by implication is not favored. [Neibling v. Methodist Orphans' Home, 315 Mo. 578 at 588, 286 S. W. 58.] This has been followed in Mort v. Trustees of Baker University, 229 Mo. App. 632, 78 S. W. (2d) 498. We have not even looked upon the prior alienation of property specifically devised as an implied revocation. Outside of a change in the family conditions this seemed to be the most usual instance of revocation by operation of law accepted by the common law. [Page on Wills (2 Ed.), sec. 455.] Although we have applied the principle, we have held it was not a real *revocation* of such devise. We said in Fisher v. Keithley, 142 Mo. 244, 43 S. W. 650, that such an alienation merely *operated* as a revocation of the devise and could not be regarded as an exception to the statutory mode of revocation but as a failure of the subject of the devise. This was repeated with approval in Graham v. Karr, 331 Mo. 1157, 55 S. W. (2d) 995 at page 999. And in Dunlap v. Hart, 274 Mo. 600, 204 S. W. 525, we said it was not accurate to term this a revocation of the devise but that it was analogous to an ademption of a bequest which

merely *operated* as a revocation. In an early decision the St. Louis Court of Appeals decided that the Legislature in speaking of a revocation.in the statute did not mean to include such a case for the reason that, strictly speaking, it was not a revocation although it may have had the same effect. [Cozzens v. Jamison, 12 Mo. App. 452.]

We can find no case in this State, nor is any cited to us, which holds that we have extended the means of revocation beyond the statute so as to include revocation by implication. Whether divorce and property settlement operate as a revocation is therefore a question of first impression in this State. The diversity of the decisions of other states is chiefly traceable to the differences among the statutes on revocation.

Where the statutes are similar to ours it is held that implied revocation by divorce and property settlement is excluded. [In re Nenaber's Estate (S. Dak.), 225 N. W. 719, and Pacetti v. Rowlinski (Ga.), 150 S. E. 910.] A contrary decision was made in a recent case by the Illinois Court of Appeals in Gartin v. Gartin, 16 N. E. (2d) 184, which held that a divorce and property settlement revoked a will although Illinois has a statute on revocation similar to ours. The basis for the ruling was that the Supreme Court of that State had announced the doctrine that a will may be revoked by implication despite the statute. There was an additional factor mentioned in the opinion that the testator had sought to destroy the will.

Cases from other jurisdictions show that in none, except where expressly provided by statute as in Minnesota and Washington, is divorce alone sufficient to revoke a devise. To effect a revocation the divorce must be accompanied by a property settlement. [See cases cited in the annotation in 25 A. L. R. 49.] This is true even in those states which by statute have provided for revocation by implication. [In re McGraw's Estate, 233 Mich. 440, 207 N. W. 10, 42 A. L. R. 1283.]

In the states which hold that divorce, together with the additional element of a property settlement, does effect a revocation we find different statutes. Those states have affirmatively adopted by statute the common-law rule of implied revocation of a will by the "changed conditions and circumstances" of the testator arising subsequent to its execution. Michigan has provided the pioneer case under such statutes in Lansing v. Haynes, 95 Mich. 16, 54 N. W. 699. [See also Battis' Will, 143 Wis. 234, 126 N. W. 9; Donaldson v. Hall, 106 Minn. 502, 119 N. W. 219; In re Martin, 109 Neb. 289, 190 N. W. 872; Wirth v. Wirth, 149 Mich. 687, 113 N. W. 306; Pardee v. Grubis, 34 Ohio App. 474, 171 N. E. 375.]

The fact that the will designated the respondent as "my beloved wife" cannot be held to mean that if she is not his wife at the time of his death, then the devise lapses. This same situation under the same contention arose in Jones' Estate, 211 Pa. 364, 60 Atl.

915, 60 L. R. A. 940, where it was held that the word "wife" was descriptive only and did not imply any continuing condition or import a condition that the beneficiary should remain the testator's wife. Under similar conditions the same ruling was applied to the use of "my beloved husband" in Murphy v. Markis, 98 N. J. Eq. 153, 130, Atl. 840. In re Brown's Estate, 139 Iowa, 219, 117 N. W. 260, held despite the use of the words "my wife Ida" that Ida took under the will after her divorce and that the words "my wife" were merely descriptive. That case announced there was no conflict in the authorities on this proposition citing Card v. Alexander et al., 48 Conn. 492, and Smith v. Greeley, 67 N. H. 377, 30 Atl. 413. On the same subject see In re Weymouth's Will, 165 Wis. 455, 161 N. W. 373; Bullock v. Zilley, 1 N. J. Eq. 489, and Johnson v. Johnson, 1 Tenn. Ch. 621. We are not persuaded by a contrary holding of the surrogate in In re Gilmour's Estate, 146 Misc. 113, 260 N. Y. Supp. 761. Furthermore, we find in the later case of In re Simpson's Will, 155 Misc. 866, 280 N. Y. Supp. 705, a contrary ruling was made.

We conclude therefore that the will must stand as it was written. Under the circumstances of this case such a conclusion may seem harsh but it is irresistibly compelled by the principles of the law. The Legislature has given us a code governing wills. If it is to be expanded or changed it is for the Legislature to do so. We must administer it as we find it.

The judgment is affirmed. All concur.