ROBERT A. SWANN, *et al.*

*v.*

OLLIE SWANN

(No. 10023)

Submitted April 20, 1948. Decided June 15, 1948.

*Scott & Ducker* and *H. L. Ducker,* for appellants.

*Fitzpatrick, Strickling & Marshall* and *Jackson N. Huddleston,* for appellee.

KENNA, JUDGE:

This chancery proceeding was brought in the Circuit Court of Cabell County by Robert A. Swann, Katherine S. Gay, Henry C. Swann, Myrtle W. Swann, Homer H.

Swann and Edna S. Weatherholt who claimed as the heirs at law and distributees of Clarence C. Swann against Ollie Swann, the separated but not divorced wife of the decedent, for the purpose of procuring a decree that would hold "for naught and of no force or effect whatsoever" a paper dated the 27th day of October, 1921, and probated in the County Court of Cabell County on the 31st day of May, 1946, on motion of Ollie Swann, as and for the last will and testament of Clarence Calvary Swann. The cause was submitted on its merits and from a decree declining to grant the relief prayed and dismissing the bill of complaint the complainants below were granted this appeal.

In addition to attacking the validity of the will in question the bill of complaint prays that Ollie Swann "be debarred from having any right of dower or any interest whatsoever, by devise, bequest or otherwise, in and to the property of which the said Clarence C. Swann died seized and possessed;". In a proceeding of this nature the sole question before the Court is the validity of the paper under attack, the contractual or other relationship of the named beneficiaries which might affect the extent and right of their taking under the will if held valid or by dower being regarded as not germane. *Childers* v. *Milam*, 68 W. Va. 503, 504, 70 S. E. 118. *Canterberry* v. *Canterberry*, 118 W. Va. 182, 189 S. E. 139. In our opinion the same is true of the question of ademption of the beneficial provisions of the will in question, which is not alleged in the bill of complaint nor included in its prayer but seems to be asserted for the first time in this Court. The initial validity of the will in question is not under attack, the question being whether it was revoked by a subsequent property settlement entered into by Clarence Swann and Ollie Swann on the 15th day of November, 1945. There are but two assignments of error, the first that the Circuit Court of Cabell County erred in holding that the paper in question was in all respects the last will and testament of Clarence C. Swann and the second that its provisions in favor of Ollie Swann "were not revoked, annulled, satisfied or adeemed by the separation and property settlement agreement dated November 15, 1945 * * *".

The proof shows that Clarence C. Swann became the husband of Ollie Swann on February 2, 1920. While taking a Masonic degree at Morgantown, where he was then a student, the will in question was executed by Swann. It reads as follows:

"I Clarence Swann of Morgantown, W. Va. Co. of Mono*ughalia.

"I give, *deris,* and bequeath all my estate, both real and personal of which I may die seized and possessed, to my wife Ollie Swann, and my Children.

"Any my wife shall be the guardian over the children.
/s/   Clarence Calvary Swann   (SEAL)

"Signed, sealed, published, and declared by the said Clarence Calvary Swann testator, as and for his last will and testament; and we, at his request and in his presence, and in the presence of each other, have hereto subscribed our names as witnesses thereto, this _____ Day of 27 of Oct., A. D. 1921
/s/   Armand Derr
/s/   R. A. Lough"
"Cabell County Clerk
May 31, 3 P. M. 1946"

There were no children as a result of their marriage.

After the husband left West Virginia University the couple lived for a time with Mrs. Swann's father near Barboursville, Cabell County. Following that they were in the grocery business at Milton and later the husband formed a partnership in the same business at Barboursville. Swann later acquired the sole ownership of the Barboursville business in which Mrs. Swann worked, according to her statements, "slavishly". The record does not show when the disagreement leading to their marital difficulties began, but apparently they differed seriously as to the manner of conducting the business some time before November 15, 1945. At any rate, in February, 1945, the business was sold to a man by the name of Browning, Swann retaining the building. Apparently when the prop-

erty agreement was made divorce was not contemplated by either, but before Swann went to Florida in January, 1946, he had seriously discussed the matter with his attorney and upon his return in late March or early April he definitely employed counsel for that purpose. Swann died on April 30, 1946.

Paragraphs 2, 5 and 6 of the property settlement agreement of November 15, 1945, contain the provisions that we are here concerned with. They read as follows:

" * * *

2. That the husband does hereby agree to deliver to the wife Five Thousand Dollars ($5,-000.00) face value in bonds of the United States and the further sum of Three Thousand Dollars ($3,000.00) in cash, which delivery is made in full and complete discharge of any and all liability which might rest upon the husband to support and maintain the wife, and which sum is accepted in full and complete settlement and discharge of all rights of the wife in and to any and all property of any kind and character and wheresoever situate of the husband, as well also as any right the said wife may have under the statute to inherit the property, real, personal or mixed, of the husband.

* * *

5. The wife covenants that all of the property which the husband now owns or may hereafter acquire shall be and is hereby freed and discharged of her right to dower and of her right to inherit as a distributee, to the same extent as if she were not his wife, and she further covenants that she will execute such deeds, releases, or other instruments from time to time as may be necessary to bar, release, or extinguish such rights.

6. The foregoing contains the entire agreement between the parties, and there are no other understandings or agreements between them not herein set forth."

Restricting our consideration here to the prayer of the bill of complaint and the proof introduced in support of its allegations, it is apparent that under the provisions of

Code, 41-1-7, providing the only ways in which a will may be revoked in this jurisdiction, there has been no revocation nor destruction of the will in question. It may be true that the separation of husband and wife, coupled with a written contract executed by both providing for the support and maintenance of the wife as well as her renunciation of her right to any part of the husband's estate would give rise to implied revocation of a will in which the wife is the sole beneficiary. But implied revocation is precluded as a recognized principle by the express language of our applicable statutes. Code, 41-1-7, is as follows:

> "No will or codicil, or any part thereof, shall be revoked, unless under the preceding section, or by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, and executed in the manner in which a will is required to be executed, or by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke."

As holding that such statutory provisions are exclusive of implied revocation and citing authorities see *Robertson v. Jones,* 345 Mo. 828, 136 S. W. 2d. 278 and *In Re Cabaniss' Estate,* 191 Okl. 340, 129 P. 2d. 1003.

However, if it be conceded that an implied revocation may rest entirely upon a subsequent written instrument alone, ignoring the surrounding facts and circumstances, does the contract of November 15, 1945, constitute such revocation. We think not. The preamble to that paper recites:

> "Whereas, the said parties hereto desire to settle their property rights, as well as any liability of the husband for the support of the wife, * * *."

and the wife covenants that all property of the husband then or thereafter owned is freed and discharged of her right to inherit as a distributee, to the same extent as if she were not his wife. The paper deals only with the wife's then existent *right,* which of course means an en-

560

forceable claim. It is a contract dissolving the property obligations arising from marriage. It approaches and deals with the questions here involved not as they concern the wife's capacity to become a beneficiary under the husband's will, but only as they relate to her right to share in his property. Of course in dealing with the validity of a will as a general rule, subject to exceptions with which we are not here concerned, the courts are not considering a contractual relationship. To the contrary a will is a paper voluntarily executed by the testator, of the existence or provisions of which the beneficiaries frequently know nothing. And to say that a written contract by implication was intended to revoke the effect of a paper in the possession and subject to the absolute control of its sole maker where the correct construction of its language does not so require would certainly be indulging in a *non sequitur*. It cannot be said to a beneficiary: "You have abjured your right and therefore you cannot receive something to which you can assert no right". See annotation 104 A. L. R. 1104. The life of a will as a legal instrument dates from the death of the testator, so that when the agreement of November 15, 1945 was executed, Ollie Swann had no right of any kind under the will of Clarence C. Swann to relinquish.

The exclusion of the testimony of the witness Henchman concerning a conversation had by him with Clarence Swann after the execution of the agreement of November 15, 1945, in the course of which Swann stated to him, Henchman, that Mrs. Swann had thereby received all that she would ever get from him and that he, Swann, had no will, is briefed as error. This testimony we think was properly excluded because based upon hearsay and if admitted would have only the effect of tending to prove that Swann had completely forgotten the existence of a will. If he had, that fact would not affect the validity of his will. *La Rue* v. *Lee,* 63 W. Va. 388, Syl. 4 and Page 393, 60 S. E. 388. It is difficult to conceive how testimony tending to establish Swann's complete loss of memory of the existence of a will could benefit the plaintiffs in their contention that the will was revoked by the testator.

Revocation depends upon intention. Certainly the intention to destroy cannot exist when the object to be destroyed is thought not to exist. If Swann thought that he had no will, certainly his intention to revoke could not occur. Therefore, we think the testimony in any event was withheld without prejudice to the plaintiffs. However, the question does not affect the result in this instance since it relates only to implied revocation which, we believe under the plain wording of our statute, is a principle not recognized in this jurisdiction.

The complainants further contend that the payment of $8,000.00 to Mrs. Swann upon her execution of the property settlement agreement adeemed the devises and bequests which she would receive under Swann's will in any event. Money paid in performance or discharge of a legal obligation is not an ademption. An ademption also rests upon intention, either expressed or inferred from the established surrounding circumstances. Swann went carefully into this matter with his attorney and no will or testamentary disposition was under consideration or mentioned. Therefore, ignoring the fact that the money was paid in discharge or satisfaction of a legal obligation, it was certainly not intended to be credited upon a bequest or devise not present in the mind of the maker of the will at the time the contract was executed and the payments made. But the matter of ademption is not a point of decision in the case at bar. We have held the bill of complaint upon which the case was submitted goes no further than to attack the validity of the will itself and does not reach the question of the fulfillment or nonfulfillment of its provisions.

There is some confusion in the decided cases arising from the discussion of revocation of a whole instrument and what is termed revocation of only a repugnant specific provision, as, for example, by making a subsequent different disposition of the same property. The latter is spoken of in *Henry v. Haymond,* 77 W. Va. 173, 177, 87 S. E. 78, as being an implied revocation, thus, perhaps, creating some confusion if considered in the light of the

cases discussing the general rule of implied revocation as it relates to the instrument as a whole. It would seem that the subsequent different disposition of property without reference to a former devise or bequest thereof does not erase the first provision nor have the effect of making it invalid: it simply nullifies its effect by eliminating its object. In short, it countermands rather than revokes. See *Hattersley* v. *Bissett*, 71 N. J. Eq. 597, 29 Atl. 187, 28 R. C. L. 193.

For the foregoing reasons the decree of the Circuit Court of Cabell County is affirmed.

*Affirmed.*