Robert E. CRIST, Executor of the Estate of James W. Nesbit, deceased, Respondent,

v.

Anna Ottolene NESBIT, Respondent,

Harry Combs Saunders and Thelma Saunders, Appellants.

No. 23424.

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1961.

Carstarphen & Harvey, Hannibal, for appellants.

Don C. Carter, Sturgeon, for respondent Anna Ottolene Nesbit.

BROADDUS, Judge.

This action originated in the Circuit Court of Randolph County, at Moberly, by petition filed therein by Robert E. Crist, Executor of the Estate of James W. Nesbit, deceased, in which petition the executor sought to have the Last Will and Testament of said James W. Nesbit construed, and to declare the rights of the surviving spouse, Anna Ottolene Nesbit, and Harry Combs Saunders and Thelma Saunders, husband and wife, under said Will, and to order and direct to whom the executor should make distribution in said estate. The surviving spouse and beneficiaries under the Will were made parties, as was the son of the deceased, James Kenneth Nesbit, who was disinherited. Separate answer of Anna Ottolene Nesbit, surviving spouse, and separate answer of the two beneficiaries, Harry Combs Saunders and Thelma Saunders, were duly filed.

The trial was had on December 21, 1960, and the case taken under advisement by the Court, and on February 7, 1961, a memorandum opinion was filed with the Clerk, and judgment rendered as follows:

"It is hereby ordered, adjudged and decreed by the Court that plaintiff, Robert E. Crist, Executor of the Estate of James W. Nesbit, deceased, shall make distribution of said estate after payment of all just debts and funeral expenses of deceased, in the order, as follows:

"First: To defendant, Anna Ottolene Nesbit, the value of the exempt personal property as specified in Sec. 474.250, Mo. Statutes, to be computed as the cash value received from prior sale by Executor of this specified property.

"Second: To defendant, Anna Ottolene Nesbit, the value of one year's maintenance as specified in 474.260, Mo. Statutes, which shall be allowed by the Probate Court of Randolph County, Missouri.

"Third: To defendant, James Kenneth Nesbit, the sum of one dollar.

"Fourth: To defendant Anna Ottolene Nesbit, one-half of the remainder of the estate.

"Fifth: To defendants Harry Combs Saunders and Thelma Saunders, as joint tenants, the remaining assets in the estate.

"It is further ordered that a certified copy of this judgment shall be delivered to the Probate Court of Randolph County, Missouri. * * *"

Defendants, Harry Combs Saunders and Thelma Saunders, have appealed from said judgment.

The facts are not in dispute. James W. Nesbit died on April 28, 1959. He executed a will on April 20, 1959. Seven days later he executed a new will. The lan-

guage of the two wills is identical with this exception; the new will named Robert E. Crist as executor instead of Sam Friedman. The will dated April 27, 1959, was executed at Shelbina, Missouri, at the office of Mr. Crist somewhere around 9:00 or 10:00 o'clock in the forenoon. It contains five clauses. The *first* directs that debts and funeral expenses be paid; the *fifth* names the executor. The remaining clauses read as follows:

"Second: I give, devise and bequeath to my wife, Anna Ottolene Nesbit, such part of my estate as under the laws of the State of Missouri my said wife would be entitled, and no more.

"Third: I give, devise and bequeath to my son, James Kenneth Nesbit, the sum of One ($1.00) Dollar.

"Fourth: All the rest, remaining and residue of my property, wherever located and of whatever nature, I give, devise and bequeath to Harry Combs Saunders and Thelma Saunders, as joint tenants."

On the afternoon of the day the last Will was executed (April 27, 1959) James W. Nesbit and his then wife, Anna Ottolene Nesbit, entered into a property settlement agreement which recited that certain differences have arisen between the parties, and "Anna Ottolene Nesbit is contemplating filing a petition for divorce. * .* *" The agreement was entered into at Moberly. Mr. Nesbit was represented by his attorney, Sam Friedman, and Mrs. Nesbit by her attorney, Don Carter. Immediately following the execution of the property settlement contract Mr. Carter prepared a petition for divorce on behalf of Mrs. Nesbit and mailed it to the Clerk of the Circuit Court of Moberly, where it arrived on the morning of April 29. Mr. Carter, learning that morning that Mr. Nesbit had died, immediately called the Clerk and requested him not to open the envelope containing the divorce petition, but to return it to him in another envelope, which the Clerk did,

and which was exhibited by Mr. Carter at the trial, envelope being unopened. The parties stipulated "that said property settlement as written, was fully carried out by the parties thereto."

Mr. Crist, the Executor, testified that he wrote the first Will on April 20, 1959, in which Sam Friedman, a lawyer at Hannibal, was nominated as executor, and he also wrote the one here involved on April 27, 1959. Mr. Crist also testified that while preparing the last Will, the testator said he didn't want his wife to have any of his property. A letter, Exhibit 2, found in the effects of the decedent's home, right after the discovery of his dead body, was also offered in evidence. At the top of this letter are the words: "Tuesday Morning, 8:00 A.M." The letter is addressed; "Dear Pete." It contained the statement: "Nothing in the house belongs to her, and I hope you will see it carried out that way. It should net you between six and seven thousand dollars. * * * The property will be clear and will belong to you as provided in the Will." The evidence disclosed that defendant Harry Combs Saunders is known by the family and generally as "Pete." Thelma Saunders, his wife, is a sister of Anna Ottolene Nesbit.

The Will was duly admitted to probate in the Probate Court of Randolph County on May 1, 1959. Thus the time has run in which it could be contested. The files of the Probate Court were offered to show that Mrs. Nesbit had timely filed her petition for exempt property and for a year's allowance, which has been held in abeyance awaiting the outcome of this action. All of the assets of the estate have been converted to cash and there is approximately $9000 in the hands of the Executor for distribution.

This case presents two questions, viz.:

I. Did the Will of James W. Nesbit, deceased, give his surviving spouse, Anna Ottolene, anything. If so, what did it give her?

II.   Does the property settlement entered into between them on April 27, 1959, estop the surviving spouse from claiming under the Will?

■   Appellants contend that the Will gave the surviving spouse, Anna Ottolene Nesbit, only the right to elect to take contrary to the Will, and that she is estopped to take under the Will, by reason of the property settlement which she made with her husband, the day before his death.

Under the provisions of Section 474.160, V.A.M.S., a surviving spouse has the right and privilege to elect to take against the Will of her deceased spouse, but Mrs. Nesbit did not make any such election.  And since she did not make any such election to take against the Will, Section 474.230, V.A.M.S., definitely sets out what she is entitled to in the estate, viz.:

"When a surviving spouse makes no election to take against the will, he shall receive the benefit of all provisions in his favor in the will, if any * * *.  By taking under the will or consenting thereto, he does not thereby waive his right to a homestead allowance, to exempt property or to an allowance under section 474.260 unless it clearly appears from the will that the provision therein made for him was intended to be in lieu of such rights or any of them."

Under the provisions of Section 470.-010, V.A.M.S., since there was a son by said marriage, Mrs. Nesbit gets one-half of the estate.  And in addition she gets exempt property, Section 474.250, V.A.M.S. and a year's provisions, as provided in Section 474.260, V.A.M.S.  And she gets all of those things because the testator, James W. Nesbit, says he wants his wife to have, *"such part of my estate as under the laws of the State of Missouri, my said wife would be entitled to."*

Did the testator intend to give his wife, Anna any of his estate?  If he did not, what does he mean in clause Fourth of his Will, when he says:

"All of the rest, remainder and residue of my property, wherever located and of whatever nature, I give, devise and bequeath to Harry Combs Saunders and Thelma Saunders, as joint tenants."

That can only be construed to mean, that after the wife had received the property given to her in the Third clause of the Will, he wants the remainder to go to the Saunders Appellants.

■   The Will is short and there is no ambiguity whatsoever in it.  It is the established rule that the court must determine the intention of the testator from the four corners of the Will, as expressed in the Will, and not from the testimony of the scrivener, that the testator said he didn't want his wife to have any of his estate.  Nor from letters written by the testator, subsequent to making the Will, which are contrary to the expressed intention written in the Will.  In re Side-bottom's Estate, 327 S.W.2d 270, 278 (Mo. Sup.);  Gehring v. Henry, 332 S.W.2d 873 (Mo.Sup.).  And the testator must be presumed to have intended the legal effect of language used in his Will, since he is presumed to know the law.  Thomas v. Higginbotham, 318 S.W.2d 234 (Mo.Sup.).  And since the Will was written by a lawyer, the words used have a *legal effect* and meaning.  Littleton v. General American Ins. Co., 136 S.W.2d 433 (Mo.App.).

■   Does the property settlement agreement estop Mrs. Nesbit from claiming anything under the Will, as appellants contend.  This contention was disposed of by the learned trial judge in the following language:

"That the Will in granting to defendant, Anna Ottolene Nesbit, 'such part of my estate as under the laws of the State of Missouri my said wife would be entitled to, and no more',

creates certain rights in defendant Anna Ottolene Nesbit in the estate of James W. Nesbit and the terms and provisions of the property settlement cannot revoke this portion of the Will or alter or change in any way the rights granted freely and voluntarily by the testator to his wife." Citing Robertson v. Jones, 345 Mo. 828, 136 S.W.2d 278.

In our opinion the Robertson case, supra, absolutely controls the decision in this case, because in that case there was not only a property settlement, but also a divorce, but since the Testator had left a Will giving his wife certain rights, the Supreme Court held:

"The fact that the testator and wife were divorced and that he made a property settlement with her shortly before he died, without making a new will, would not operate as a 'revocation of will' in which he left half of his property to his 'beloved wife.'"

Section 474.400 V.A.M.S., states how a Will can be revoked, viz.: "by a subsequent will in writing, or by burning, canceling, tearing or obliterating the same, by the testator." This has been the law for many years in this State.

In 1955, the Legislature, evidently with the intent to change the decision in the Robertson case, supra, enacted Section 474.420, which states that if after making a Will, the testator is divorced, all provisions in the Will in favor of the testator's spouse so divorced are thereby revoked, the effect of the same being the same as if the divorced spouse had died at the time of the divorce.

But since there is no divorce in the case at bar, and Anna Ottolene Nesbit is the surviving spouse of James W. Nesbit, deceased, this Statute does not affect the decision in the Robertson case, and it is the law in this case, and Mrs. Nesbit takes under the Will and her rights under the Will are not affected by the property set-

tlement which she and her husband entered into on April 27, 1959.

Appellants in their brief have cited and quoted from many decisions. The plea of estoppel made in those cases was sustained, but in none of them was a will involved.

The judgment is affirmed. All concur.