GAY NELL MAYNARD

*v.*

JERRY LEE MAYNARD,

*Administrator, etc.*

(No. 13457)

Decided October 29, 1974.

*Smith & Rumora, W. Graham Smith, Jr.,* for appellant.

*Broh & Vital, Richard L. Vital* for appellee.

BERRY, JUSTICE:

The appellant, Jerry Lee Maynard, the administrator of the estate of Elba Lee Maynard, appeals from a final judgment of the Circuit Court of Mingo County entered July 23, 1973 in which the court held that Gay Nell Maynard, the ex-wife of Elba Lee Maynard, was entitled to take certain devises and bequests made to her under the will of Elba Lee Maynard. Jerry Lee Maynard contends that the divorce and property settlement between Elba Lee Maynard and Gay Nell Maynard subsequent to the execution of Elba Lee Maynard's will was tantamount to an implied revocation of his will. This Court granted the appeal on March 4, 1974 and the case was submitted for decision September 10 on the briefs and oral arguments on behalf of the respective parties.

Gay Nell Maynard instituted a declaratory judgment proceeding in the Circuit Court of Mingo County for the purpose of construing the will of Elba Lee Maynard, her former spouse. It appears from the facts stipulated by the parties that Gay Nell Maynard and Elba Lee Maynard were married in 1961 and remained married until January 31, 1972, at which time they were divorced by decree entered in the Circuit Court of Mingo County. Elba Lee Maynard executed his last will and testament on May 31, 1967. The only devices to Gay Nell Maynard in Elba Lee Maynard's will were in part as follows:

> *THIRD*:—I hereby give, devise and bequeath unto my beloved wife, GAY NELL MAYNARD, all of that certain real estate locate and situate in the City of Williamson * * * known as Parkway Drive ... upon which there is situate two (2) houses.
>
> \* \* \*
>
> *SIXTH*:—I now own and operate what is known as Maynard Grocery Company and it is my desire that the ownership, as well as all of the rights and privileges incident thereto, shall be devised and bequeathed unto the following designated persons, in joint undivided interests, in the re-

spective percentage ownership therein as indicated, to-wit:—

(1)         *   *   *

(2) GAY NELL MAYNARD Wife 10%

      *   *   *

*EIGHTH*:—I hereby give, devise and bequeath all of the rest and residue of my personal estate, wheresoever situate, unto my beloved wife, GAY NELL MAYNARD . . ."

A property settlement was agreed upon between the parties on January 31, 1972 and made a part of the divorce decree. The settlement provided that Elba Lee Maynard would pay unto Gay Nell Maynard a lump sum of $40,000 and that she would not receive any alimony. Gay Nell Maynard also received an Oldsmobile Cutlass automobile which belonged to her ex-husband. Elba Lee Maynard subsequently died on July 30, 1972 and his last will and testament was submitted for probate in the Circuit Court of Mingo County on August 26, 1972. The Circuit Court ruled that there was no implied revocation of the will as a result of the divorce coupled with the property settlement and that the only method of revoking a will in West Virginia is prescribed by Code, 41-1-7, which reads as follows:

> No will or codicil, or any part thereof, shall be revoked, unless under the preceding section, or by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, and executed in the manner in which a will is required to be executed, or by the testator, or some person in his presence and by his direction, cutting, tearing, burning, obliterating, canceling or destroying the same, or the signature thereto, with the intent to revoke.

It is generally held that where the statute provides the manner for revocation and does not mention divorce as having any effect on a prior will, and contains no exception permitting implied revocation, the statutory method of revocation is exclusive and a divorce and

property settlement do not revoke a prior will. *Mosely v. Mosely*, 217 Ark. 536, 231 S.W.2d 99 (1950); *In Re Darrow's Estate*, 164 Pa. Super. 25, 63 A.2d 458 (1949); *In Re Cabaniss' Estate*, 191 Okla. 340, 129 P.2d 1003 (1942); *Robertson v. Jones*, 345 Mo. 828, 136 S.W.2d 278 (1940); *Gartin v. Gartin*, 371 Ill. 418, 21 N.E.2d 289 (1939); *In Re Patterson's Estate*, 64 Cal. App. 643, 222 P. 374 (1923).

The case of *Luff v. Luff*, 359 F.2d 235, (D.C. Cir. 1966), which involved a statute similar to the statute in this state, is contra to the general rule. It apparently followed authorities in states where the statute was different and contained an exception permitting implied revocation of wills.

The doctrine of implied revocation of a will in this state has been discussed by this Court. In two earlier cases, *Carpenter v. Miller's Executors*, 3 W. Va. 174 (1869) and *Henry v. Haymond*, 77 W. Va. 173, 87 S.E. 78 (1915), the Court indicated that implied revocation of a will was applicable in West Virginia without referring to the revocation statute, and applied the common law theory of revocation. *See, Rankin v. McDearmon*, 38 Tenn. App. 160, 270 S.W.2d 660 (1953). The case of *Nelson v. Ratliffe*, 137 W. Va. 27, 69 S.E.2d 217 (1952) contains language with regard to implied revocation of wills concerning affirmative acts specified within the statute. It states that a will can be expressly or impliedly revoked but specifically referred to the statute stating that it could only be revoked by an affirmative act. That case was decided after the case of *Swann v. Swann*, 131 W. Va. 555, 48 S.E.2d 425 (1948), which is quite similar to the case at bar, except that the parties were not divorced. In the *Swann* case the parties were married, separated many years later and entered into a property settlement wherein the wife obtained certain sums of money and released all rights that she may have had in the property of her husband. It was held in that case that she could take under a will made prior to the separation, and although some of the language is confusing it was stated in the opinion that an implied revocation is precluded as a recognized principle by *Code* 41-1-7. This

principle is clearly stated in Point 2 of the syllabus of the *Swann* case in the following language: "Code, 41-1-7, provides the only ways in which a will can be revoked in this jurisdiction and under its provisions the principle known as implied revocation is excluded."

Where the statutory method of revoking a will is exclusive and does not contain an implied revocation exception with regard to a divorce, such change of condition will have no effect on a prior will of a husband or wife regardless of whether or not the divorce was coupled with a property settlement. *See,* Annot., 18 A.L.R.2d 697. Generally, it has been held that where the ex-wife was referred to as "my beloved wife" in the devises under the will and where there was a change in status by virtue of a divorce the devises are not affected in any way, as such terms are merely descriptive.

Under the statute law of this state the only way in which a will can be revoked is under the provisions of the statute, and the principle known as implied revocation is excluded. 20 M.J. *Wills* § 46. Inasmuch as *Code* 41-1-7, excludes the principle of implied revocation, a subsequent divorce, either with or without a property settlement, does not affect the will of a testator and any change in the law regarding this matter would have to be made by the legislature and not by the judiciary. This is precisely what occurred in Arkansas after the case of *Mosely v. Mosely, supra,* was decided by the Supreme Court of that state. The court found that the statute was exclusive and the doctrine of implied revocation was not applicable and a subsequent divorce would not affect the will of the testator. The legislature later changed the law and provided that a divorce would specifically revoke all prior testamentary provisions in favor of a divorced spouse.

For the reasons stated herein, the judgment of the Circuit Court of Mingo County is affirmed.

*Affirmed.*